ATTORNEY FOR APPELLANT
Mark A. Bates
Schererville, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

David Steiner
Kathy Bradley
Deputy Attorneys General
Indianapolis, Indiana

_____

# In the
# Indiana Supreme Court



FILED
Aug 22 2013, 1:11 pm

CLERK
of the supreme court,
court of appeals and
tax court

_____

No. 45S03-1301-CR-9

RONALD G. BECKER,

*Appellant (Defendant),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff).*

_____

Appeal from the Lake Superior Court, No. 45G04-9702-CF-37
The Honorable Thomas P. Stefaniak, Jr., Judge

_____

On Petition to Transfer from the Indiana Court of Appeals, No. 45A03-1112-CR-539

_____

**August 22, 2013**

**Rush, Justice.**

Criminal cases are prosecuted in the name of the "State of Indiana." But as Shakespeare famously asked, "What's in a name? that which we call a rose / By any other name would smell as sweet."[1] Gertrude Stein's answer was that "Rose is a rose is a rose is a rose."[2] Similarly, we conclude that in this matter related to the sex offender registry, "the State is the State," whether it

_____

[1] William Shakespeare, <u>Romeo and Juliet</u> act 2, sc. 2.

[2] Gertrude Stein, <u>Sacred Emily</u>, <u>in</u> <u>Geography and Plays</u> 178, 187 (1922).

acts through a deputy prosecutor or through the Department of Correction. Both entities share the same substantial interest—to maximize an offender's registration obligations—and are therefore in privity with each other in cases involving that interest. Accordingly, we hold that when the State (via a local prosecutor) fails to appeal an adverse sex-offender registration ruling, the State (via the DOC) becomes bound by it under principles of *res judicata*.

The DOC's 2011 intervention in this case therefore came too late. On its face, the DOC's motion challenged a trial court ruling issued a few weeks earlier—but in substance, it sought reconsideration of an unappealed 2008 ruling that had long since become binding against the State. We thus reverse the trial court's order granting the DOC's Motion to Correct Error.

### Facts and Procedural History

A jury convicted Defendant Ronald Becker of B-felony criminal deviate conduct, and he was sentenced in March 1998 to six years executed. In late 2000, he was released from prison and began registering as a sex offender annually for ten years after release, as Indiana law at the time of his offense and conviction required.[3]

A few months after Becker's sentencing, though, Indiana had enacted its first heightened registration requirements for "sexually violent predators" (SVPs). As those statutes existed from 1998 to 2005, the window in which Becker was released, imposing SVP status required a trial court to find *at sentencing* based on the testimony of a panel of experts that the defendant was likely to reoffend because of a mental abnormality or personality disorder.[4] The offender would then have to register for a longer term—at first, "for an indefinite period" until a similar panel of experts concluded otherwise;[5] then as of 2003, for life.[6] But because those statutes were not enacted until after Becker's sentencing, the court made no such finding in his case.

Then in 2006, the statute was expanded so that certain convictions—including Becker's offense of criminal deviate conduct—established SVP status as a matter of law;[7] and in 2007,

---

[3] Ind. Code §§ 5-2-12-4(1)(B), -5, -13 (1997).

[4] I.C. §§ 5-2-12-4.5, 35-38-1-7.5 (2003).

[5] I.C. § 5-2-12-13(b) (1998).

[6] I.C. § 5-2-12-13(b) (2003).

[7] I.C. § 35-38-1-7.5(b)(1)(B) (2006).

SVPs were required to register every 90 days, instead of annually.[8] Because of those changes, the sheriff's department notified Becker to begin registering every 90 days. Becker then petitioned the sentencing court in 2008 for an order relieving him from the additional SVP obligations, arguing they were an unconstitutional *ex post facto* law[9] as applied to him. In February 2008, following a contested hearing, the trial court found that SVP status did not exist when Becker was sentenced; and that when he was released from prison and his registration obligation began, SVP status could only be determined by an affirmative finding made at sentencing. The Court therefore concluded that since no such finding had been made at Becker's sentencing, retroactively classifying him as an SVP would be unconstitutional. The trial court's order held in relevant part:

> Because the status and consequent burdens and responsibilities of being judicially deemed a "sexually violent predator" did not exist at the time . . . Becker[] was sentenced, no judge has ever determined him to be a sexually violent predator and the statute constitutes an *ex post facto* law in his case. The defendant shall continue to register annually and not every ninety (90) days.

Though the State had objected to Becker's petition, it did not appeal the 2008 Order; nor did the DOC intervene to challenge it.

In early 2011, Becker returned to court after ten years on the sex-offender registry, seeking clarification of the 2008 Order, which had not specifically stated whether he was also exempt on *ex post facto* grounds from the SVP statute's lifetime registration term. This time, the State entered into an Agreed Order with Becker, reciting that he had satisfied his registration obligations under the ten-year statute that existed at the time of his conviction and was no longer required to register. The trial court approved the agreement on June 10, 2011.

Barely two weeks later, this Court decided Lemmon v. Harris, which rejected an *ex post facto* argument identical to the one on which Becker had prevailed in the 2008 Order. 949 N.E.2d 803 (Ind. 2011). This time, the Attorney General intervened on behalf of the DOC as administrator of Indiana's sex offender registry, and filed a timely Motion to Correct Error arguing that under Harris, extending Becker's registration obligation from ten years to life was not an *ex post facto* violation. The trial court granted the DOC's motion and vacated both the Agreed Order and the 2008 Order, thus ordering Becker to continue registering every 90 days for his lifetime.

---

[8] I.C. § 11-8-8-14(b) (2008).

[9] See Ind. Const. art. 1, § 24.

Becker appealed, arguing that Harris is distinguishable, and that the 2008 Order was *res judicata* against the DOC. In an unpublished decision, the Court of Appeals held that Harris was indistinguishable, and that the 2008 Order was not binding against the DOC because Becker became an SVP "not because of action on the part of the DOC, but by operation of law" under Harris. Becker v. State, No. 45A03-1112-CR-539 (Ind. Ct. App. June 14, 2012).

The Court of Appeals was right about Harris, but we granted transfer because we find a different issue dispositive—that even though the 2008 Order was erroneous, it nevertheless became *res judicata* against "the State," both the prosecutor and the DOC, when the State failed to appeal it. We therefore reverse the trial court.

## Standard of Review

In this case, Becker appeals from the trial court's grant of the DOC's Motion to Correct Error. Generally, rulings on motions to correct error are reviewed only for abuse of discretion, recognizing the trial court's superior position to resolve disputed facts. In re S.H., 984 N.E.2d 630, 633 (Ind. 2013). But when, as here, a motion to correct error depends on a question of law, we review the trial court's resolution of that question *de novo*. Id.

## I. *Res Judicata*

The parties' main dispute on transfer is whether the DOC and the prosecutor are in privity as "the State"—because if so, the DOC's relitigation of Becker's SVP status is barred by *res judicata*. *Res judicata*, whether in the form of claim preclusion or issue preclusion (also called collateral estoppel), aims to prevent repetitious litigation of disputes that are essentially the same, by holding a prior final judgment binding against both the original parties and their privies. See, e.g., Indianapolis Downs, LLC v. Herr, 834 N.E.2d 699, 703–05 (Ind. Ct. App. 2005), trans. denied.

The DOC does not dispute that the 2008 Order was a final judgment, but instead challenges its privity with the prosecutor. "[A] 'privy' is one who after rendition of [a] judgment has acquired an interest in the subject matter affected by the judgment," or "whose interests are represented by a party to the action." MicroVote Gen. Corp. v. Ind. Election Comm'n, 924 N.E.2d 184, 196 (Ind. Ct. App. 2010). "[A]n entity does not have to control a prior action . . . for

4

privity to exist." Id. "[I]n determining the parties for *res judicata* purposes, [the] court looks beyond the nominal parties and treats those whose interest[s] are involved as the real parties." Id. Under that standard, the DOC is in privity with the prosecutor, and is therefore bound by the prosecutor's failure to appeal the 2008 Order's final judgment about Becker's SVP status.

The DOC argues that it and the Deputy Attorneys General who ordinarily represent it have special expertise in the law governing administration of the sex offender registry, so that its interests are not "adequately represented" by a local prosecutor. But this argument misunderstands *res judicata* terminology. "Adequate representation" is not about the qualifications of the attorneys, but the commonality of the parties' substantial interests. See, e.g., Hansberry v. Lee, 311 U.S. 32, 44–45 (1940) (holding that an agreed judgment upholding the enforceability of racially restrictive covenants was not binding against later challengers to the covenants, whose "substantial interests [were] not necessarily or even probably the same as" the interests of the prior litigants). Here, the prosecutor had the same substantial interest in the 2008 proceedings as the DOC—keeping Becker on the registry under the heightened SVP requirements. The prosecutor therefore also had the same incentive as the DOC to appeal from the adverse ruling in the 2008 Order, and yet it failed to do so. Indeed, the prosecutor objected to the relief granted to Becker in 2008 on precisely the same *ex post facto* grounds the DOC now seeks to reargue—grounds that might have been vindicated in this case instead of Harris, had the 2008 Order been appealed. Since the DOC's interests were more than "adequately represented" by the local prosecutor, they are in privity for purposes of *res judicata*, and so the 2008 Order—and the failure to appeal from it— are binding against the DOC.

## II. Intervention

The 2008 Order is also binding against the DOC for a second reason unrelated to privity or *res judicata*—that the DOC's 2011 intervention was simply too late to challenge the 2008 Order. Generally speaking, parties who intervene in a case must take the case as they find it. "An intervenor is treated as if it was an original party and has equal standing with the parties." Mercantile Nat. Bank of Ind. v. Teamsters Union Local No. 142 Pension Fund, 668 N.E.2d 1269, 1271 (Ind. Ct. App. 1996). But that means that intervenors, just as any other party, are "not permitted to relitigate matters already determined in the case," and are bound "to all prior orders and judgments in the case." Id. Though the DOC's Motion to Correct Error was timely as to the 2011 Agreed

Order, granting that Motion would necessarily nullify the 2008 Order as well—and that Order had become final more than three years earlier. Under black-letter intervention principles, then, the 2008 Order was binding against the DOC and could not be relitigated for that reason as well.

## Conclusion

If the *res judicata* shoe were on the other foot in this case, Becker would be hard-pressed to avoid its preclusive effects. There is, after all, only one of him, with no alter egos to intervene on his behalf if a law later changed in a way favorable to his position. Final judgments in a criminal case should be similarly binding against "the State"—not just the prosecutor, but also the various alter egos of the State whose substantial interests are adequately represented by the prosecutor. In this case, the DOC is also "the State"—not because it is a State agency, but because it has the same substantial interests as the prosecutor in maximizing a sex offender's registration obligations. The DOC, being in privity with the prosecutor, is thus bound by the unappealed 2008 final judgment in Becker's favor. We therefore reverse the trial court's grant of the DOC's Motion to Correct Error, thus reinstating the June 2011 Agreed Order finding that Becker's registration obligations are complete.

Dickson, C.J., and Rucker, David, and Massa, JJ., concur.