
FILED
Dec 05 2018, 12:19 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Indiana Supreme Court

Supreme Court Case No. 18S-MI-286

## State of Indiana and Indiana Bureau of Motor Vehicles

*Appellants (Respondents below)*

—v—

## Daniel Reinhart

*Appellee (Petitioner below)*

---

Argued: June 19, 2018 | Decided: December 5, 2018

Appeal from the Adams Superior Court
No. 01D01-1703-MI-12
The Honorable Patrick R. Miller, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 01A02-1709-MI-2049

---

**Opinion by Justice Massa**

Chief Justice Rush, Justice David, Justice Slaughter, and Justice Goff concur.

**Massa, Justice.**

The proper venue for seeking specialized driving privileges depends on whether the petitioner's underlying suspension was court ordered or whether it was imposed administratively by the BMV. The latter suspension type requires the petitioner to seek relief in his or her county of residence; the former requires the petitioner to file in each court that ordered a suspension.

But where is the proper venue for seeking relief when that person "forfeits" driving privileges for life following a felony conviction for driving while suspended? Because we consider this lifetime forfeiture an administrative suspension, we hold the proper venue is the trial court in a person's county of residence. We thus affirm the trial court's order granting Reinhart's petition for specialized driving privileges.

## Facts and Procedural History

Daniel Reinhart, a resident of Adams County, is subject to three separate driver's license suspensions. The BMV imposed two of these suspensions, in 2012 and 2015, for habitual traffic violations in Adams County. The third suspension is a lifetime forfeiture resulting from a 2015 felony conviction in Noble County for driving while suspended as a habitual traffic violator. *See* Ind. Code § 9-30-10-16 (2014) (Section 16).

In 2017, Reinhart petitioned the Adams Superior Court for specialized driving privileges (SDP), seeking relief from all three suspensions under Indiana Code section 9-30-16-4 (Section 4).[1] Section 4 requires drivers suspended by **administrative action** of the BMV to petition the court of his or her county of residence. I.C. § 9-30-16-4(d)(1) (2016). But for **court-ordered** license suspensions, Indiana Code section 9-30-16-3 (Section 3) requires the suspended driver to petition "each court that has ordered or

---

[1] "A person whose driving privileges are suspended or forfeited for a determined period or for life under this chapter is eligible for specialized driving privileges." Ind. Code § 9-30-10-19 (2017).

imposed a suspension of the individual's driving privileges." I.C. § 9-30-16-3(b) (2016) (we refer to Sections 3 and 4 collectively as the SDP Statute).

The Adams Superior Court granted Reinhart's SDP petition, despite the State's questioning of its jurisdiction over the "sentence" imposed by the Noble Superior Court. Tr., p.12. The SDP order stayed all three suspensions for two years, allowing Reinhart to drive to and from work, to visit his children, and to other limited locations (for example, to buy groceries or attend medical appointments) at specified times. The State moved to correct error, arguing that the Adams Superior Court lacked jurisdiction to stay or modify the lifetime forfeiture imposed by the Noble Superior Court. The Adams Superior Court disagreed, characterizing the lifetime forfeiture as an administrative suspension over which it properly exercised jurisdiction.

Our Court of Appeals reversed and remanded, instructing the trial court to "vacate that portion of its order related to Reinhart's Noble County suspension." *State v. Reinhart*, 93 N.E.3d 801, 803 (Ind. Ct. App. 2018), *vacated*. The panel held that the Noble Superior Court ordered Reinhart's lifetime forfeiture, thus requiring him to petition that court separately for SDP. *Id.* "The fact that the Noble County court was required to suspend his privileges for life does not transform the suspension," the panel explained, "which was part of a criminal sentencing order, into an administrative suspension." *Id.* The panel also held, contrary to precedent, that the "Adams County trial court lacked jurisdiction to modify the Noble County order" since "one court cannot modify or change the record of another court of equal jurisdiction." *Id.*; *contra Prosecuting Attorney of Hendricks Cty. v. Hammer*, 92 N.E.3d 649, 652 (Ind. Ct. App. 2017) (holding that a trial court "has subject matter jurisdiction to adjudicate petitions for specialized driving privileges" when the underlying suspension resulted upon conviction in another trial court).

Although our General Assembly has since amended Section 16 to remove the lifetime license forfeiture, *see* Pub. L. No. 188-2015, § 117, 2015 Ind. Acts 2248, 2318–19, we granted transfer to resolve the conflict in our Court of Appeals precedent and to provide a path forward for those in Reinhart's position.

## Standard of Review

We typically review a trial court's ruling on a motion to correct error for an abuse of discretion. *Becker v. State*, 992 N.E.2d 697, 700 (Ind. 2013). But when that motion rests on an issue of statutory construction, as it does here, we review the trial court's ruling de novo. *Id.* Questions of subject-matter jurisdiction fall under the same standard of review. *In re Adoption of J.T.D.*, 21 N.E.3d 824, 827 (Ind. 2014).

## Discussion and Decision

In 1929, the Indiana General Assembly adopted the state's first law governing the licensing of drivers. *See* Act of Mar. 13, 1929, ch. 162, 1929 Ind. Acts 499. Among other things, the measure set forth licensing application and renewal procedures, established certain standards for driving competency, and outlined the grounds for the suspension of driving privileges. *Id.* §§ 5, 7–9, 14, 15–17, 1929 Ind. Acts at 501–04, 506, 507–09. The statute also made it a misdemeanor offense for a person to drive with a "suspended or revoked" license. *Id.* § 26, 1929 Ind. Acts at 511.

The modern incarnation of this offense—codified in 1972 by the Habitual Traffic Offender Act—is part of a larger legislative scheme imposing increasingly serious sanctions on a person it defines as a habitual traffic violator (or HTV). *See* Pub. L. No. 81-1972, § 1, 1972 Ind. Acts 510, 510–17 (codified as amended at I.C. ch. 9-30-10).[2] Within this statutory framework (which we refer to as the HTV Law), a habitual traffic violator faces the suspension of driving privileges for up to ten years, depending on the nature and number of the offenses committed

---

[2] The Habitual Traffic Offender Act has manifested itself in various places in the Motor Vehicle Code over the years. First codified at Indiana Code chapter 9-4-13, the Act became Indiana Code article 9-12 in 1984 under the heading of Habitual Violator of Traffic Laws. *See* Pub. L. No. 79-1984, §§ 1, 2, 1984 Ind. Acts 959, 959–66. And in 1991, the legislature recodified the law at Indiana Code chapter 9-30-10, where it remains today under virtually the same heading. *See* Pub. L. No. 2-1991, §§ 18, 109, 1991 Ind. Acts 191, 655–65, 736.

over a ten-year period. *See* I.C. §§ 9-30-10-4, -5. Those caught driving while suspended face felony convictions and, under some circumstances, the potential suspension of driving privileges for life. *See* I.C. §§ 9-30-10-16, -17.

But in recognizing the critical role automobiles play in people's lives, the legislature has long offered relief—albeit limited—to those suspended drivers who can demonstrate hardship. Before 2015, suspended drivers could petition for a "restricted" driving permit "for the *sole and exclusive purpose* of driving to and from work" if the suspension "would work an undue hardship" on the individual's "family and dependents." I.C. § 9-5-2-1 (1976) (recodified at I.C. § 9-24-15-2 (1993) (repealed 2015)) (emphasis added). *See also Gibson v. Hernandez*, 764 N.E.2d 253, 256 (Ind. Ct. App. 2002) (holding that "the statute does not permit a trial court to grant a restricted driving permit for the transportation of children to and from school and doctor's appointments even in emergencies"), *trans. denied*.

The SDP Statute's passage in 2014 expanded the relief available to those with driver's license suspensions. *See* Pub. L. No. 217-2014, § 154, 2014 Ind. Acts 2675, 2759–61 (codified as amended at I.C. ch. 9-30-16). Unlike its predecessor statute, the SDP Statute contains no express limitations on the type of relief a petitioner may seek. Instead, the SDP Statute permits the trial court to define the "terms of specialized driving privileges" at its discretion. I.C. § 9-30-16-3(d). And, with certain exceptions, these privileges apply for up to two and a half years, "regardless of the underlying offense." I.C. § 9-30-16-3(c).[3]

To secure relief, a petitioner for SDP must follow specific pleading requirements. *See* I.C. §§ 9-30-16-3(b) (listing conditions for form, filing, and service of process); 9-30-16-4(b) (same). And the proper venue in which to file depends on whether the petitioner's underlying suspension was court ordered or imposed by the BMV. The latter suspension type

---

[3] The other principal avenue of relief, Indiana Code section 9-30-10-14.1, permits a person, under certain conditions and after a specified number of years, to petition a court for a rescission of a lifetime suspension. I.C. § 9-30-10-14.1 (2016).

requires the petitioner to file in his or her county of residence, while the former type requires the petitioner to file in each court that ordered a suspension. I.C. §§ 9-30-16-3(b); 9-30-16-4(d)(1).

Here, the parties agree that Reinhart properly petitioned the Adams Superior Court for the two HTV suspensions imposed by the BMV in 2012 and 2015. The dispute centers instead on the proper venue for seeking relief from the lifetime forfeiture of driving privileges resulting from Reinhart's 2015 felony conviction in Noble County. Resolution of this dispute turns on whether the lifetime license forfeiture imposed under Section 16 constitutes an administrative or court-ordered suspension, as those terms apply to the SDP Statute.

Section 16 makes it a Level 6 felony for a person who knowingly drives with a suspended license. I.C. § 9-30-10-16(a). But at the time of Reinhart's conviction, Section 16 added that,

> [i]n addition to any criminal penalty, a person who is convicted of a felony under subsection (a) *forfeits the privilege of operating a motor vehicle for life*. However, if judgment for conviction of a Class A misdemeanor is entered for an offense under subsection (a), the court may order a period of suspension of the convicted person's driving privileges that is in addition to any suspension of driving privileges already imposed upon the person.

I.C. § 9-30-10-16(c) (emphasis added) (repealed 2015).

Whether the lifetime forfeiture of driving privileges is administrative or court ordered is a question of statutory interpretation. "The goal of statutory interpretation is to discern and further the intent of the legislature." *West v. Office of Indiana Sec'y of State*, 54 N.E.3d 349, 353 (Ind. 2016). To that end, we look to the statute's plain language, "giving its words their ordinary meaning and considering the structure of the statute as a whole." *Id.* "And when confronted with more than one statute on the same subject, we must try to harmonize any inconsistencies." *Id.* By

legislative mandate, courts must, in deciding traffic-offense cases, construe the general penalty provisions of the Motor Vehicle Code "to secure simplicity and uniformity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay." I.C. § 9-30-3-1.

## I. Sections 3 and 4 designate venue rather than confer jurisdiction.

We must first decide whether, under Indiana Code chapter 9-30-16, a trial court in one county has subject-matter jurisdiction to adjudicate an SDP petition when an underlying suspension resulted upon conviction by a trial court in another county.

Subject-matter jurisdiction is the constitutional or statutory power of a court "to hear and determine cases of the general class to which any particular proceeding belongs." *K.S. v. State*, 849 N.E.2d 538, 540 (Ind. 2006). So, in determining whether a court has subject-matter jurisdiction, the only relevant inquiry is whether the petitioner's claim "falls within the general scope of the authority conferred upon such court by the constitution or by statute." *State ex rel. Young v. Noble Circuit Court*, 263 Ind. 353, 356, 332 N.E.2d 99, 101 (1975).

Here, the Adams Superior Court, as with all Superior Courts in Indiana, exercises "original and concurrent jurisdiction in all civil cases and in all criminal cases." *See* I.C. § 33-29-1-1.5. And the SDP Statute neither restricts a court's subject-matter jurisdiction nor confers it exclusively to a particular court.[4] The statute instead simply prescribes venue, "the location at which trial proceedings are to occur from among the courts empowered to exercise jurisdiction."[5] *J.T.D.*, 21 N.E.3d at 829

---

[4] Comparatively, for example, a "juvenile court has exclusive original jurisdiction" over cases involving delinquent children or children in need of services. I.C. § 31-30-1-1.

[5] Indiana Code section 9-30-10-14.1 similarly designates venue by requiring a person to petition a court in his or her county of residence "for a rescission of [a lifetime] suspension order and reinstatement of driving privileges." I.C. § 9-30-10-14.1(b)–(c), (f).

(internal quotation marks omitted). *See also* Ind. Trial Rule 75(D) ("No statute or rule fixing the place of trial shall be deemed a requirement of jurisdiction.").[6]

This "special procedure" controls "the exercise of the judicial function." *State ex rel. Root v. Circuit Court of Allen Cty.*, 259 Ind. 500, 505–06, 289 N.E.2d 503, 507 (1972) (discussing the pleading and venue requirements under the former statute governing restricted driving permits). But procedural error doesn't rob the court of jurisdiction. *K.S.*, 849 N.E.2d at 541. *See also Hammer*, 92 N.E.3d at 652 (whether a suspended driver petitions the proper court under the SDP statute is a "question of legal error, not jurisdictional error"). Failure to transfer the SDP petition to the proper court under Trial Rule 75(B), upon timely objection, simply renders the court's final judgment voidable and thus subject to appeal. *In re Chapman*, 466 N.E.2d 777, 779 (Ind. Ct. App. 1984), *trans. denied*.

In concluding that the SDP Statute establishes venue requirements, we reject the State's argument that the Adams Superior Court lacked subject-matter jurisdiction to stay the lifetime license forfeiture imposed by the Noble Superior Court.

## II. Absent a conviction modification, a lifetime license forfeiture under Section 16 is an administrative suspension.

Reinhart argues that a lifetime license forfeiture is an administrative suspension subject to Section 4. Upon his felony conviction, he insists, the forfeiture resulted by operation of law. The State counters that a lifetime forfeiture is a court-ordered suspension subject to Section 3 because "only

---

[6] Trial Rule 75(D) also renders "ineffective" those statutes imposing "more stringent" venue requirements. *See also* I.C. § 34-8-1-3 ("[A]ll laws in conflict with the supreme court's rules [governing practice and procedure] have no further force or effect."). But because the issue is not dispositive here, we need not decide whether the SDP Statute's venue requirements conflict with this rule.

a court may impose criminal punishment on someone convicted of a felony." Appellant's Br. at 15. Without the court's judgment of conviction, the State contends, the "BMV did not have the authority to suspend Reinhart's license under Indiana Code section 9-30-10-16," and "any attempt to allow the BMV to impose criminal punishment would violate the separation of powers doctrine." *Id.* at 15–16; Resp. to Trans. at 12.

## A. As a collateral consequence of conviction, the lifetime license forfeiture is an administrative suspension.

We agree with the State that only trial courts may impose criminal judgments. Indeed, the "penal consequences of a guilty finding are triggered only by the entry of a judgment of conviction." *Gardiner v. State*, 928 N.E.2d 194, 197 (Ind. 2010). *See also* I.C. § 35-50-1-1 ("The court shall fix the penalty of and sentence a person convicted of an offense."). But the "required forfeiture of a defendant's driver's license [is] a collateral consequence of a guilty plea" and conviction, "not [a] punishment imposed by the court." *Stoltz v. State*, 657 N.E.2d 188, 192 (Ind. Ct. App. 1995) (internal quotation marks omitted).

A sanction is a criminal punishment when its purpose is punitive rather than remedial.[7] *Moala v. State*, 969 N.E.2d 1061, 1066 (Ind. Ct. App. 2012). A collateral consequence, by contrast, is a civil penalty or disability imposed either by operation of law at the time of conviction or because of a subsequent, separate proceeding by a court or administrative agency. Am. Bar Ass'n, *Crim. Just. Standards on Collateral Sanctions and Discretionary Disqualification of Convicted Persons* 7 n.2 (3d ed. 2004). These consequences may apply indefinitely or for a limited period and may include, for example, deportation, loss of the right to vote, restrictions on firearm possession, and ineligibility for certain government assistance programs.

---

[7] A statute is "remedial" if it serves to "enforce rights or redress injuries" or to correct a defect in the law. Black's Law Dictionary 1634 (10th ed. 2014).

*Id.* at 7; *Hitch v. State*, 51 N.E.3d 216, 227–28 (Ind. 2016) (Massa, J., concurring in result).

Some collateral consequences impose onerous, long-lasting burdens on an individual. *See, e.g., In re Matter of S.D.*, 2 N.E.3d 1283, 1290 (Ind. 2014) (discussing the "harmful," long-term implications of a CHINS finding on a parent). Other collateral consequences serve important public interests. *See, e.g., Kirby v. State*, 95 N.E.3d 518, 519 (Ind. 2018) (statute barring a "serious sex offender" from entering school property is a collateral consequence of criminal conviction). A driver's license suspension falls under this latter category.

The General Assembly enacted the HTV Law "to reduce the number of motor vehicle accidents in this state and to provide greater safety to the motoring public by denying to habitual traffic offenders the privilege of operating a motor vehicle." Pub. L. No. 81-1972, § 1, 1972 Ind. Acts at 510. In reiterating this purpose, this Court explained that "the deprivation of the license to drive" by operation of law "is not a punishment as a result of a criminal proceeding, but is rather an exercise of the police power for the protection of the public." *State ex rel. Van Natta v. Rising*, 262 Ind. 33, 36, 310 N.E.2d 873, 875 (1974).

Although the HTV Law no longer includes an express purpose, our Court of Appeals has consistently interpreted a driver's license suspension, "[w]hether it be for life or for a more limited time," as a remedial or regulatory measure. *Hazelwood v. State*, 3 N.E.3d 39, 43 (Ind. Ct. App. 2014); *see also Indiana Bureau of Motor Vehicles v. McNeil*, 931 N.E.2d 897, 902 (Ind. Ct. App. 2010) (asserting that the purpose of the sanction is "not to impose punishment" but rather "to remove from the highway those drivers who have proven themselves to be unfit to drive, and who pose a substantial threat to the safety of others") (internal quotation marks omitted), *trans. denied*.

To be sure, Section 16 defines a criminal offense. I.C. § 35-52-9-53 ("IC 9-30-10-16 defines a crime concerning habitual violator of traffic laws."). And a trial court may impose additional penalties on a person convicted of a driving offense. *See* I.C. § 9-30-16-1 (permitting a court to "suspend the driving privileges of a person convicted of [certain] offenses

[involving the use of a motor vehicle] for a period up to the maximum allowable period of incarceration under the penalty"). But the HTV Law as a whole—of which Section 16 forms a part—embodies a larger "administrative suspension scheme" in which driving privileges "may be withheld, suspended or revoked by the State for reasons involving public safety." *Schrefler v. State*, 660 N.E.2d 585, 587–88 (Ind. Ct. App. 1996) (citing *Ruge v. Kovach*, 467 N.E.2d 673, 677 (Ind. 1984) (holding that the license suspension procedure under the former implied-consent statute was civil in nature)). And although the loss of driving privileges "has some punitive impact on the offender, and may be implemented as a part of sentencing upon criminal conviction," this loss "is merely *incidental* to the overriding remedial purpose of the statute." *Id.* at 588 (emphasis added).

This conclusion tracks the opening sentence of subsection 16(c), which clearly signals that a lifetime license forfeiture is separate from "any criminal penalty" the trial court may impose. I.C. § 9-30-10-16(c). Nothing in that sentence requires judicial action; the felony conviction itself triggers the non-discretionary penalty. *See Pillow v. State*, 986 N.E.2d 343, 345 (Ind. Ct. App. 2013) (holding that Section 16's lifetime license forfeiture applied even though neither the trial court's sentencing order nor the defendant's BMV record showed the forfeiture). The trial court merely performs the ministerial task of notifying the BMV of the conviction through the appropriate administrative form.[8] The BMV, in turn, by express statutory authority, then implements the suspension. *See* I.C. § 9-14-8-3(3) (vesting authority in the BMV to suspend or revoke the "current driving privileges or driver's license of any individual" upon "any reasonable ground appearing on [the BMV's] records").

Our conclusion here also harmonizes with the legislative mandate of Indiana Code section 9-30-10-17. *See Klotz v. Hoyt*, 900 N.E.2d 1, 5 (Ind.

---

[8] The certified abstract of court record used here, commonly referred to as the SR16, is the form used by trial courts to notify the BMV of "the conviction of a person in the court for a violation of a law relating to motor vehicles." I.C. § 9-30-13-0.5(a) (2015). The abstract itself "must be in the form prescribed by the [BMV]." I.C. § 9-30-13-0.5(e).

2009) (an appellate court will construe statutes relating to the same subject matter to produce a harmonious statutory scheme). That statute makes it a Level 5 felony for a person who drives with a suspended license and causes serious bodily injury or death, or who drives with a lifetime license forfeiture following a conviction under Section 16. I.C. § 9-30-10-17(a). If the offense results in death, "*the bureau shall suspend* the person's driving privileges for the life of the person." I.C. § 9-30-10-17(b) (emphasis added).

Finally, interpreting Section 16's lifetime forfeiture as an administrative suspension comports with the legislative mandate that courts construe traffic-offense statutes "to secure simplicity and uniformity in procedure" and to further "the elimination of unjustifiable expense and delay." I.C. § 9-30-3-1. The State's reading of the statute, by contrast, would require individuals to petition each court from which a lifetime forfeiture arose, increasing exponentially the number of SDP petitions filed and adding to the already-congested dockets of our trial courts.

## B. A conviction modification under Section 16 results in a court-ordered suspension.

Unlike the opening sentence of subsection 16(c), its second sentence expressly vests discretionary authority in the trial court to "order a period of suspension" when "*judgment for conviction* of a Class A misdemeanor *is entered* for an offense under subsection (a)." I.C. § 9-30-10-16(c) (emphasis added). This second sentence implicates two criminal statutes governing the conversion of Level 6 felonies to Class A misdemeanors: Indiana Code sections 35-50-2-7 and 35-38-1-1.5. The former statute permits a trial court to modify the conviction at the time it delivers its sentence. I.C. § 35-50-2-7(c) (2014); *State v. Brunner*, 947 N.E.2d 411, 416 (Ind. 2011). The latter statute contains no time restrictions on the conviction modification but requires the defendant to fulfill "certain conditions," to which the court

and the prosecuting attorney must agree.[9] I.C. § 35-38-1-1.5(a)–(b) (2014). Under either statutory mechanism, "the entry of judgment of conviction upon the misdemeanor offense constitutes a new and different judgment effectively vacating the prior judgment." *Gardiner*, 928 N.E.2d at 197.

Given this context, we conclude that the second sentence of subsection 16(c), when exercised at the trial court's discretion, transforms an administrative forfeiture into a court-ordered suspension. *See State v. Vankirk*, 955 N.E.2d 765, 769 (Ind. Ct. App. 2001) (holding that a trial court's entry of judgment of conviction for a Class A misdemeanor for an offense under Section 16 removes the lifetime license forfeiture), *trans. denied*. This conclusion fits logically with Section 3's venue requirement that a suspended driver seek relief from the court (or courts) that modified the suspended driver's conviction. As Reinhart notes, the "duration of the suspension" imposed by the court depends "on the facts of that particular case, including the nature and severity of the offense, as well as the character of the defendant." Appellee's Pet. to Trans. at 22. A non-discretionary lifetime forfeiture, on the other hand, depends simply on the defendant's HTV status, not the specific facts of the case or the agreed-upon conditions he must fulfill to reduce the sentence.

In sum, we hold that, under Section 16, a conviction modification from a Level 6 felony to a Class A misdemeanor results in a court-ordered suspension. But with no conviction modification, a lifetime license forfeiture constitutes an administrative suspension for purposes of the SDP Statute.[10]

---

[9] While the "entry of a judgment of conviction under this section does not affect the application of any statute requiring the *suspension* of a person's driving privileges," I.C. § 35-38-1-1.5(e) (emphasis added), the section does *not* prohibit a modification of a defendant's driving privileges from a *lifetime forfeiture*, *State v. Vankirk*, 955 N.E.2d 765, 768 (Ind. Ct. App. 2011) (observing the "significant difference" in consequences between the two sanctions and noting the statute's silence as to the latter), *trans. denied*.

[10] We note that, at the hearing on the State's motion to correct error, counsel for the BMV acknowledged repeatedly that a lifetime forfeiture is "an administrative suspension mandatorily imposed by state law upon conviction" under Section 16, "regardless of what the judge does" and "whether or not the judge makes reference to it in his order." Tr., p.24.

# Conclusion

Today, an estimated 420,000 Hoosiers navigate their daily lives with suspended driving privileges. Ryan T. Schwier & Autumn James, Indiana University McKinney School of Law, *Roadblock to Economic Independence: How Driver's License Suspension Policies in Indiana Impede Self-Sufficiency, Burden State Government & Tax Public Resources* 6 (2016), *available at* https://mckinneylaw.iu.edu/practice/clinics/_docs/DL_Rpt_2-1-16.pdf. With few alternative forms of transportation, many of these individuals face significant barriers to maintaining employment and supporting their families, an outcome that effectively discourages economic independence. *Id.* at 35. To be sure, Indiana's traffic laws play a critical role in keeping the roads safe for drivers in the state. And those who violate these laws must be held accountable. But when the legislature has offered an avenue of relief to those who can demonstrate hardship, and when a court determines that they no longer threaten public safety, we see no reason to impose additional roadblocks.

For the reasons specified above, we affirm the trial court's order granting Reinhart's petition for relief from all three suspensions under Indiana Code section 9-30-16-4.

Rush, C.J., and David, Slaughter, and Goff, JJ., concur.

ATTORNEYS FOR APPELLANTS
Curtis T. Hill, Jr.
Attorney General of Indiana

Aaron T. Craft
Andrea Rahman
Deputy Attorneys General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
Brian J. Johnson
Danville, Indiana