**FILED**

Dec 12 2019, 8:57 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANTS

Curtis T. Hill, Jr.
Attorney General of Indiana

Aaron T. Craft
Section Chief, Civil Appeals

Josiah J. Swinney
David E. Corey
Deputy Attorneys General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

John L. Tompkins
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Indiana Bureau of Motor Vehicles and the Marion County Prosecutor's Office, | December 12, 2019 |
| *Appellants-Respondents,* | Court of Appeals Case No. 19A-MI-719 |
| v. | Appeal from the Marion Circuit Court |
| | The Honorable Mark A. Jones, Judge |
| Dezie McClung, | The Honorable Sheryl L. Lynch, Judge |
| *Appellee-Petitioner.* | Trial Court Cause No. 49C01-1803-MI-10290 |

**Mathias, Judge.**

[1] In November 2018, the Marion Circuit Court granted a petition for specialized driving privileges to Dezie McClung ("McClung"), a Marion County resident

whose driving privileges had been suspended. Shortly thereafter, the Indiana Attorney General, on behalf of the Indiana Bureau of Motor Vehicles ("BMV"), filed a motion to correct error arguing that the trial court's order was contrary to Indiana Code section 9-30-16, which imposes a durational limit on specialized driving privileges when such privileges are granted. The trial court denied the BMV's motion to correct error. This appeal by the BMV presents one issue for our review: whether the trial court acted contrary to law when it denied the BMV's motion to correct error and permitted specialized driving privileges to be granted for indefinite periods. Because we find that the trial court's order was contrary to applicable law, we reverse and remand.

## Facts and Procedural History

[2] McClung was subject to three active driver's license suspensions at the time he petitioned for specialized driving privileges. The BMV imposed one suspension, in 2012, due to McClung being a habitual traffic violator ("HTV"). This ten-year, administrative suspension took effect on December 21, 2012, and expires in 2022. The two other suspensions are indefinite or "lifetime" suspensions that resulted from McClung's 2011 and 2012 Level 6 felony convictions for driving while suspended as an HTV.[1] *See* Ind. Code § 9-30-10-16 (2015). For the purpose of determining the availability of specialized driving privileges under

---

[1] Specifically, the two suspensions imposed following McClung's convictions were: cause number 49F18-1112-FD-89898 for operating as an HTV, effective December 27, 2011; and cause number 69D01-1202-FD-25 for operating during a lifetime suspension, effective October 9, 2012.

Indiana Code section 9-30-16-1, *et seq.*, all three of McClung's suspensions are considered administrative suspensions, as opposed to being court-ordered suspensions.[2]

[3] In March 2018, McClung filed a petition for specialized driving privileges in the Marion Circuit Court. McClung sought relief from the suspensions under Indiana Code section 9-30-16-4 ("Section 4"), which governs administrative suspensions of driving privileges. Appellant's App. pp. 24–25. After a hearing, the trial court stayed McClung's suspensions and granted specialized driving privileges as requested on November 5, 2018. Appellant's App. pp. 8–12. The trial court's order stated, in relevant part:

> 8. IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that, **any outstanding fines and/or reinstatement fees are waived**, the Petition for Specialized Driving Privileges is GRANTED, the above-referenced suspension(s) is/are stayed, and Petitioner is granted **SPECIALIZED DRIVING PRIVILEGES** commencing on the date of this Order **do not expire until further court order**. The conditions and limitations of those Specialized Driving Privileges are as follows:
>
> * * *

---

[2] Our supreme court recently held that indefinite suspensions resulting from court orders (also called "lifetime forfeitures") are administrative suspensions within the meaning of Indiana Code section 9-30-16-1, *et seq*. *State v. Reinhart*, 112 N.E.3d 705 (Ind. 2018). Accordingly, the two "indefinite suspensions" that resulted after McClung was convicted in a court are administrative, not court-ordered, suspensions.

## DURATION OF THIS ORDER FOR SPECIALIZED DRIVING PRIVILEGES

> The Specialized Driving Privileges granted by this Order shall remain in effect until ~~11:59:59 P.M. on the ___ day of ___, 20___,~~ **<OR>** further Court order. A Review Hearing is set in this Court on January 13, 2020, at 11:00 A.M., at which Petitioner is ordered to appear and present proof that the required insurance is still in effect and has not lapsed, and proof of attendance at A.A./N.A./counseling meetings, if that has been required by this Order.

*Id.* (Emphases in original.)

[4] On November 26, 2018, the BMV, by the Attorney General, submitted a motion to correct error pursuant to Indiana Trial Rule 59.[3] Appellant's App. pp. 43–46. The BMV's motion asserted, in relevant part:

> 4. Under Indiana Code section 9-30-16-3(c), this Court is authorized to stay a petitioner's court-ordered suspensions and grant specialized driving privileges for "at least one hundred eighty (180) days" and "not more than two and one-half (2.5) years." These limitations also apply to administrative suspensions because Indiana Code section 9-30-16-4, which governs administrative suspensions, authorizes a petitioner to petition for specialized driving privileges "as described in section 3(b) through 3(d) of this chapter."

---

[3] The Attorney General also apparently filed additional motions to correct error on the BMV's behalf in similar cases in which the Marion Circuit Court granted specialized driving privileges with no durational limit. Appellant's App. p. 13.

5. In its Order, this Court granted Petitioner specialized driving privileges that were to remain in effect until further court order. This indefinite time period exceeds the two and one-half year maximum allowed under Indiana law. I.C. section 9-30-16-3(c).

6. Therefore, this Court's Order is contrary to law and should be vacated or amended so that Petitioner's specialized driving privileges comply with Indiana Code section 9-30-16-3(c).

Appellant's App. pp. 43–44.

[5]     Shortly after the Attorney General's addition to the case, McClung filed a motion to strike appearance and filing, arguing in the alternative that the trial court's order granting specialized driving privileges was not in error. Appellant's App. pp. 49–50. The trial court ordered McClung to file a brief in response to the BMV's motion to correct error and stayed McClung's earlier motion to strike.[4] Appellant's App. pp. 51–52, 53. Meanwhile, the BMV filed a response in opposition to the motion to strike and filed a reply in support of its motion to correct error. Appellant's App. pp. 59–62, 63–82. Ultimately, on March 1, 2019, the trial court denied McClung's motion to strike the Attorney General's appearance and denied the BMV's motion to correct error. Appellant's App. pp. 13–22. The BMV now appeals the trial court's denial of its motion to correct error.

---

[4] McClung did not, in fact, file a brief in response to the BMV's motion to correct error. We note also that McClung's brief on appeal does not address the contentions raised in the appellant's argument as Indiana Appellate Rule 46(B)(2) requires. In reaching our decision, we therefore refer to the trial court's conclusions as set forth in its order denying the BMV's motion to correct error, in addition to McClung's arguments.

# BMV's Motion to Correct Error

[6]     We address initially whether the BMV waived for review the indefinite time period for which the trial court granted specialized driving privileges to McClung. When McClung's petition was before the trial court, a Marion County Deputy Prosecutor appeared on the BMV's behalf, in accordance with Indiana Code section 9-30-16-4(b). In its order denying the BMV's motion to correct error, the trial court noted that the "BMV, by its counsel, did not raise any objection to the granting of the petition, leaving it to the discretion of the Court."[5] Appellant's App. pp. 14–15. In the trial court's view, the absence of an objection from the prosecutor in response to its grant of specialized driving privileges for an indefinite duration meant that the issue was waived for review. The trial court stated:

> It is well settled that if a party does not object at trial, any objection that was available to the party is waived. Such is the case here. BMV cannot stand idly by while its counsel takes one position at a trial or hearing or by written agreement, and then try to slide in later and take a contrary position. BMV has waived the objection that it asserts by way of its [motion to correct error.]

Appellant's App. p. 15.

---

[5] The transcript of the hearing on McClung's petition for specialized driving privileges is not part of the record on appeal. In its order, the trial court noted that the prosecutor raised no objection during the hearing, and we will not second-guess the trial court's account of the proceedings. In any case, whether the prosecutor objected or not has no bearing on the resolution of the waiver issue nor on the outcome of this case.

On this basis, the trial court denied BMV's motion to correct error, though the trial court went on to address the motion, waiver notwithstanding, based on the repetitive nature of the BMV's claim. *Id.*

We cannot agree with this line of reasoning. The rule that the trial court cites applies to the effect of objections made, or not made, during trial. After a trial court has entered an order with which a party disagrees—as the BMV does here, to the trial court's order granting specialized driving privileges that exceed two and one-half years—the appropriate course of action was for the BMV to file a motion to correct error, which it did. After a trial court enters an order is not the time for an objection, and the absence of an objection here does not mean the BMV waived the issue for judicial review.

## Standard of Review

We typically review a trial court's ruling on a motion to correct error for an abuse of discretion. *Becker v. State*, 992 N.E.2d 697, 700 (Ind. 2013). But when the resolution of a motion to correct error rests on an issue of statutory interpretation, as it does here, we review the trial court's ruling de novo. *Id.* In interpreting a statute, we first determine whether the legislature has spoken clearly and unambiguously on the point in question. *Rheem Mfg. Co. v. Phelps Heating & Air Conditioning, Inc.*, 746 N.E.2d 941, 947 (Ind. 2001). When a statute is clear and unambiguous, we need not apply any rules of construction other than to require that words and phrases be taken in their plain, ordinary and usual sense. *Poehlman v. Feferman*, 717 N.E.2d 578, 581 (Ind. 1999). It is

only when a statute is susceptible to more than one interpretation that we deem it ambiguous and open to judicial construction. *Amoco Production Co. v. Laird*, 622 N.E.2d 912, 915 (Ind. 1993).

[10] In the face of an ambiguous statute, we resort to the well-established rules of statutory construction, the most important of which is to determine, give effect to, and implement the intent of the legislature. *Crowel v. Marshall County Drainage Bd.*, 971 N.E.2d 638, 645 (Ind. 2012). To do so, we read the sections of a statute together so that no part is rendered meaningless if it can be harmonized with the rest of the statute; in other words, we read the statute as a whole. *Indiana Dep't. of Public Welfare v. Payne*, 622 N.E.2d 461, 466 (Ind. 1993). We do not presume that the legislature intended for language used in a statute to be applied illogically or in a way that brings about an unjust or absurd result. *State ex rel. Hatcher v. Lake Super. Ct., Rm. Three*, 500 N.E.2d 737, 739 (Ind. 1986).

[11] Furthermore, in interpreting an ambiguous statute, we defer to the interpretation of the administrative agency charged with enforcing the statute, provided that the agency's interpretation is reasonable. *State v. Young*, 855 N.E.2d 329, 335 (Ind. Ct. App. 2006). It is well settled that a reasonable interpretation by an administrative agency is entitled to "great weight," unless the agency's interpretation is inconsistent with the statute itself. *Chrysler Grp., LLC v. Review Bd. of Ind. Dep't of Workforce Dev.*, 960 N.E.2d 118, 123 (Ind. 2012) (citing *LTV Steel Co. v. Griffin*, 730 N.E.2d 1251, 1257 (Ind. 2000)). "If the agency's interpretation is reasonable, we stop our analysis and need not move

forward with any other proposed interpretation." *West v. Office of Indiana Sec'y of State*, 54 N.E.3d 349, 353 (Ind. 2016).

[12] In light of this standard of review, we must first determine whether Indiana Code section 9-30-16, *et seq.*, is clear and unambiguous about the duration of specialized driving privileges when such privileges are granted; and second, if the statute is ambiguous, whether the BMV has provided a reasonable interpretation of the statute as a whole to which we should defer.

## Overview of the Relevant Statute

[13] Indiana law has governed motor vehicles and the licensing of drivers since 1929.[6] It is primarily the responsibility of the BMV, a state administrative agency, to suspend or revoke the privileges of drivers who fail to comply with these laws; Indiana courts may also suspend driving privileges of individuals convicted of certain traffic violations. Ind. Code §§ 9-30-16, 9-24-11-10, 9-24-18-0.5 and 9-25-6-0.5. In recent years, the number of suspended drivers in Indiana has totaled in the hundreds of thousands, putting great strain on affected individuals and on state resources. *See* n.6. To ameliorate the adverse effects of these suspensions while maintaining public safety, the Indiana General Assembly enacted a legislative scheme that establishes the procedure for

---

[6] Ryan T. Schwier & Autumn James, Indiana University McKinney School of Law, *Roadblock to Economic Independence: How Driver's License Suspension Policies in Indiana Impede Self-Sufficiency, Burden State Government & Tax Public Resources* 6 (2016), *available at* https://mckinneylaw.iu.edu/practice/clinics/_docs/DL_Rpt_2-1-16.pdf.

suspended drivers to petition courts for specialized driving privileges. Pub. L. No. 217-2014, § 154, 2014 Ind. Acts 2675, 2759–61 (codified as amended at I.C. 9-30-16 (2019)). The statute, enacted in 2014, distinguishes between drivers whose privileges have been suspended by court order and those who have been suspended by BMV administrative action. I.C. §§ 9-30-16-3, -4. But no matter the source of the underlying suspension, when they are granted, specialized driving privileges provide relief to suspended drivers by allowing them to drive for limited purposes and under certain conditions that are set at the trial court's discretion. I.C. § 9-30-16-3(d).

[14] Within the specialized driving privileges statutory scheme and at issue in this case is Ind. Code section 9-30-16-3 ("Section 3"), regarding court-ordered suspensions of driving privileges, and section 9-30-16-4 ("Section 4"), regarding suspensions of driving privileges that result from administrative action by the BMV. As amended, Section 3 reads, in relevant part:

> (a) . . . If a court orders a suspension of driving privileges under this chapter, [or under another chapter not at issue here], the court may stay the suspension and grant a specialized driving privilege as set forth in this section.

> (b) An individual who seeks specialized driving privileges must file a petition for specialized driving privileges in each court that has ordered or imposed a suspension of the individual's driving privileges. Each petition must:

>> (1) be verified by the petitioner;

(2) state the petitioner's age, date of birth, and address;

(3) state the grounds for relief and the relief sought;

(4) be filed in the court case that resulted in the order of suspension; and

(5) be served on the bureau and the prosecuting attorney.

A prosecuting attorney shall appear on behalf of the bureau to respond to a petition filed under this subsection.

(c) [Except for instances where suspension of privileges is terminated under a subsection not at issue here], regardless of the underlying offense, specialized driving privileges granted under this section shall be granted for:

(1) at least one hundred eighty (180) days; and

(2) not more than two and one-half (2 1/2) years.

(d) The terms of specialized driving privileges must be determined by a court.

I.C. § 9-30-16-3(a)–(d).

[15] Section 4, as amended, reads in its entirety:

(a) An individual whose driving privileges have been suspended by the bureau by an administrative action and not by a court order may petition a court for specialized driving privileges as described in section 3(b) through 3(d) of this chapter.

(b) A petition filed under this section must:

    (1) be verified by the petitioner;

    (2) state the petitioner's age, date of birth, and address;

    (3) state the grounds for relief and the relief sought;

    (4) be filed in the appropriate county, as determined under subsection (d);

    (5) be filed in a circuit or superior court; and

    (6) be served on the bureau and the prosecuting attorney.

(c) A prosecuting attorney shall appear on behalf of the bureau to respond to a petition filed under this section.

(d) An individual whose driving privileges are suspended in Indiana must file a petition for specialized driving privileges as follows:

    (1) If the individual is an Indiana resident, in the county in which the individual resides.

    (2) If the individual was an Indiana resident at the time the individual's driving privileges were suspended but is currently a nonresident, in the county in which the individual's most recent Indiana moving violation judgment was entered against the individual.

I.C. § 9-30-16-4(a)–(d).

[16] The dispute in this case arises from Section 4's incorporation by reference of Section 3, subsections (b), (c) and (d). Specifically, the BMV's appeal of the grant of specialized driving privileges for an indefinite time period involves Section 3(c) and whether it unambiguously directs trial courts—when they grant specialized driving privileges to drivers whose underlying suspensions arise from administrative action—to cap the duration of the privilege at two and one-half years, as the trial courts must do when they grant specialized driving privileges to drivers whose underlying suspensions are court ordered.

## I. *Permitted Duration of Specialized Driving Privileges*

[17] The BMV argues that Section 4 unambiguously incorporates Section 3(c), thereby limiting the authority of trial courts to grant petitions for specialized driving privileges that last longer than two and one-half years, no matter whether the underlying suspension is administrative or court ordered. The BMV's appeal takes issue with the unlimited duration of the specialized driving privileges granted to McClung, namely, with how the trial court ordered McClung's specialized driving privileges to remain in effect until "further court order." In the BMV's view, the trial court's order is contrary to law because Section 4 unambiguously incorporates Section 3's durational limit. And, the BMV posits, even if the statutory scheme is ambiguous, the provisions can be

harmonized to give effect to the legislature's intent of incorporating the limits of Section 3 into Section 4 without an unreasonable or unjustifiable result.[7]

[18] The trial court, after analyzing the legislative history of Indiana Code section 9-30-16, concluded that Section 3, subsections (b), (c) and (d), cannot be reconciled with Section 4. Accordingly, the trial court concluded that the legislature did not intend for the durational limit in Section 3 to apply to administrative suspensions like McClung's, which are governed by Section 4. We disagree. Section 4 clearly and unambiguously incorporates Section 3(c), the effect being that *all* grants of specialized driving privileges, including McClung's, are subject to the two-and-one-half-year durational limit. We do, however, agree with the trial court that the effect of Section 4's incorporation of Section 3(b) is ambiguous and is thus subject to judicial construction.

[19] Generally speaking, Section 4 properly incorporates by reference the three subsections of Section 3. "[A] statute may adopt a part or all of another law or statute. . . by a specific reference to the section sought to be incorporated." *J.P. v. State*, 878 N.E.2d 415, 418 (Ind. Ct. App. 2007) (citing *White v. State*, 161 Ind. App. 568, 576, 316 N.E.2d 699, 704 (1974)). Here, Section 4(a) plainly states that individuals with administrative suspensions "may petition a court for specialized driving privileges as described in section 3(b) through 3(d) of this

---

[7] In his Appellee's brief, McClung does not address the issue of ambiguity in Section 4's incorporating language. Rather, McClung offers a non sequitur having to do with the effect of the agency's administrative rules on hearing procedures, which we decline to address as the issue is not properly before this court.

chapter," thereby incorporating by specific reference those subsections into the Section 4 procedure that applies to individuals who petition for specialized driving privileges from administrative suspensions.

[20] Section 3(c) sets a durational floor and ceiling for grants of specialized driving privileges. It reads: "Except as provided in [a subsection not applicable here], regardless of the underlying offense, specialized driving privileges granted under this section shall be granted for: (1) at least one hundred eighty (180) days; and (2) not more than two and one-half (2 1/2) years." I.C. § 9-30-16-3(c). Section 4, in comparison, contains no language about the duration of specialized driving privileges. The incorporation of Section 3(c) into Section 4 is accomplished by the plain meaning of the statute, presenting no conflict and thus no need for judicial construction.

[21] The trial court, however, focused on the phrase "*under this section*" in Section 3(c), finding that it means that only specialized driving privileges granted from court-ordered suspensions must comply with the durational limit. In the trial court's words: "The ordinary meaning of 3(c) is that this subsection is limited to section 3." Appellant's App. p. 22. Furthermore, the trial court concluded that the legislative history of the statute indicates the legislature's intent to have Section 3(c)'s durational limit apply only to specialized driving privileges granted from court-ordered suspensions. We disagree. "The effect of [] incorporation by reference is the same as if the law or statute or the part thereof adopted had been written into the adopting statute." *J.P.*, 878 N.E.2d at 418 (citing *State v. Doane*, 262 Ind. 75, 78, 311 N.E.2d 803, 805–806 (1974)).

Because Section 4 clearly and unambiguously incorporates Section 3(c), the phrase "*under this section*" in the latter must be read to mean "under Section 4" when incorporated into Section 4. There is nothing to construe, and, as far as subsection (c) goes, the statute is subject to only one interpretation: specialized driving privileges granted from both court-ordered suspensions and from administrative suspensions must comply with Section 3(c) and, if granted, last for more than 180 days and no longer than two and one-half years. *See State v. Reinhart*, 112 N.E.3d 705, 710–11 (Ind. 2018) (noting that specialized driving privileges granted from both types of suspensions "apply for up to two and a half years").

[22] Therefore, we need not assess the statute's legislative history to determine the legislature's intent in amending Section 4 to incorporate Section 3(c). The statutory language is the best determinant of the legislature's intent, and here, the provision creating a durational limit for grants of specialized driving privileges can be applied as written without conflict. We are comfortable concluding that a harmonious reading of Section 3 and Section 4 allows for the incorporation of Section 3(c), regarding durational limits, into Section 4, which is otherwise silent as to durational limits.

## II. Interpreting Ambiguity in the Statute

[23] Although we conclude that the effect of Section 4's incorporating language is unambiguous as to Section 3(c), the same cannot be said for the incorporation of subsection (b). Reading subsection (b) into Section 4 leaves room for multiple interpretations, and, therefore, the incorporating language challenged here does

present a measure of ambiguity as far as determining the proper venue for filing a petition for specialized driving privileges. Thus, in resolving the conflict in the instant case, we look to the intent of the legislature in enacting the statutory scheme and to the BMV's interpretation thereof. This is appropriate because we must read the sections of a statute—here, Section 3 and Section 4—together, endeavoring to harmonize conflicting provisions where possible.

[24] Section 4(d) directs a driver with an administrative suspension to petition for specialized driving privileges in the county in which the driver resides.[8] As previously discussed, however, Section 4(a) incorporates Section 3(b), which directs the same driver with an administrative suspension to petition for specialized driving privileges in the county of the court that ordered or imposed the suspension. The plain meaning of these provisions could be fairly read to require drivers with BMV-imposed suspensions to file petitions for specialized driving privileges in the trial courts of two counties: the driver's county of residence and the county whose order gave rise to the BMV-imposed suspension, if the counties are not one and the same. The trial court interpreted the effect of these subsections as procedurally "redundant and expensive," potentially leading to "confusion, increased litigation, further strain upon the

_____

[8] A driver with an administrative suspension who was suspended by the Indiana BMV but who subsequently moves away from Indiana must file his petition in the county in which the most recent moving violation judgment against him was entered.

judicial resources, and more costs for petitioners, many of whom are already facing economic hardship." Appellant's App. p. 21.

[25] Furthermore, the trial court expressed its general displeasure with the combined effect of Section 3(b)'s venue requirement and Section 3(c)'s durational limit, writing disapprovingly that:

> [W]ithin two and one-half years, if you want to maintain your [specialized driving privileges] and even though it's an administrative suspension, not the result of any specific underlying offense, you need to file another petition in each of those courts. Again.
>
> * * *
>
> If what the legislature intended was for the court to review privileges within every two and one-half years, there are more efficient and more cost-effective methods for the courts to do this.

Appellant's App. p. 21, n.4.

[26] Thus, in justifying its denial of the BMV's motion to correct error, the trial court concluded that Section 4 cannot incorporate *any* subsection of Section 3 without conflicting provisions resulting in "confusing and at worst absurd" results. Appellant's App. p. 20. The incorporation of subsection (c) notwithstanding, we sympathize with the trial court because a reading of Section 4 with the incorporated Section 3(b) is, indeed, confusing. The trial court, however, inappropriately substituted its own opinion about the best use of judicial resources in its estimation of our legislature's intent and failed to

appropriately credit the BMV's interpretation of the ambiguous language. Because the BMV is the agency charged with enforcing this statute, deference to its reasonable interpretation of the ambiguous statute is appropriate.

[27] The BMV provided the following interpretation of the ambiguous provisions of Section 3 and Section 4:

> Drivers **may have both** administrative suspensions and court-ordered suspensions. In these situations, the petitioner **may have to go to different courts** to obtain proper venue. The plain language of the statutes requires a petitioner seeking specialized driving privileges and a stay of court-ordered suspensions to go to the court(s) that ordered the suspensions, [under Section 3(b)], and requires a petitioner seeking specialized driving privileges and a stay of administrative suspensions to go to a court in the county where the petitioner resides, [under Section 4(b)]. . . . By incorporating [Section 3(b)] into section 4, the legislature ensured that individuals [with] court-ordered **and** administrative suspensions on their driving record may receive specialized driving privileges **in the proper venues**. Thus, the trial court was incorrect to conclude that [Section 4(a)] does not incorporate all of [Section 3(b) through (d)].

Appellant's Br. at 18–19 (internal citations omitted, emphases added).

[28] Because we presume that the legislature intended the statutory language to be applied logically, and because we find the BMV's interpretation logical and reasonable, we cannot agree with the trial court's reading of this statute. "A fair reading of legislation demands a fair understanding of the legislative plan." *King v. Burwell*, -- U.S. --, 135 S. Ct. 2480, 2496 (2015). We believe that the BMV's reading and application of the statute complies with what our supreme

court noted in *Reinhart*: that provisions of the Motor Vehicle Code be construed "to secure simplicity and uniformity in procedure, fairness in administration, and the elimination of **unjustifiable** expense and delay" *Reinhart*, 112 N.E.3d at 711 (emphasis added).

[29] McClung—and, we presume, many other Hoosier drivers—is subject to three administrative suspensions of his driving privileges, two of which have no expiration date and will—absent a grant of specialized driving privileges or their subsequent revocation—prevent him from driving for the rest of his life. This is a drastic consequence imposed on Indiana drivers, primarily by the BMV but also by trial courts, when they fail to adhere to Indiana's laws governing motor vehicles and licensing. If we were to accept the trial court's interpretation of the legislature's intent as allowing specialized driving privileges from administrative suspensions to be granted for unlimited durations, we would be permitting the functional reversal of valid, lifetime suspensions that have been deemed necessary by the BMV, the administrative agency charged with enforcing the statute. We are convinced by the BMV's point that the allowance the law creates for specialized driving privileges is just that—a *privilege* available to suspended drivers. The granting of that privilege does not equate to a reversal of the suspension, a point further evinced by a plain reading of Section 3(d) also incorporated without conflict into Section 4: "The terms of specialized driving privileges must be determined by a court." I.C. § 9-30-16-3(d). The terms of specialized driving privileges include an unambiguous durational limit, plus a venue requirement that varies based on the petitioner's county of residence and

type of underlying suspension. These limits on the trial court's authority to grant petitions for specialized driving privileges are justifiable.

## Conclusion

[30] The BMV has provided an interpretation of the statute at issue here that is consistent with the statute's public safety rationale. Its interpretation of the ambiguous provisions is, therefore, a reasonable one to which we must defer because the BMV is the administrative agency responsible for the enforcement of the statutory scheme. Thus, we conclude that the trial court's order denying the BMV's motion to correct error was contrary to law because it granted specialized driving privileges to McClung that exceeded the two-and-one-half year maximum allowed under Section 4(a)'s incorporation of Section 3(c). Trial courts may not grant petitions for specialized driving privileges without also imposing a durational limit that complies with the statutory scheme. Accordingly, we reverse the judgment of the trial court and remand this cause for further proceedings consistent with this opinion.

Robb, J., and Pyle, J., concur.