ATTORNEYS FOR APPELLANTS
Geoffrey M. Grodner
Kendra G. Gjerdingen
Mallor Grodner LLP
Bloomington, Indiana

Robert C. Byerts
Bass Sox Mercer
Tallahassee, Florida

ATTORNEYS FOR APPELLEE, OFFICE OF THE INDIANA
SECRETARY OF STATE
Gregory F. Zoeller
Attorney General of Indiana

Kyle Hunter
Kenneth Biggins
Deputy Attorneys General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE, TOYOTA MOTOR SALES,
U.S.A, INC.
John C. Trimble
Brett Y. Hoy
Lewis Wagner LLP
Indianapolis, Indiana

Steven A. McKelvey, Jr.
Nelson Mullins Riley & Scarborough LLP
Columbia, South Carolina

# In the
# Indiana Supreme Court



FILED
Jun 02 2016, 1:05 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

No. 49S02-1511-PL-668

ANDY MOHR WEST D/B/A ANDY MOHR
TOYOTA, BUTLER MOTORS, INC. D/B/A
BUTLER TOYOTA, AND TW TOY, INC. D/B/A
TOM WOOD TOYOTA,

*Appellants (Petitioners below),*

v.

OFFICE OF THE INDIANA SECRETARY OF
STATE, AUTO DEALER SERVICES DIVISION,
AND CAROL MIHALIK, IN HER
REPRESENTATIVE CAPACITY AS SECURITIES
COMMISSIONER OF THE AUTO DEALER
SERVICES DIVISION, AND TOYOTA MOTOR
SALES, U.S.A., INC.,

*Appellees (Respondents below).*

Appeal from the Marion County Superior Court, No. 49D04-1403-PL-9960
The Honorable Cynthia J. Ayers, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-1411-PL-812

**June 2, 2016**

**Massa, Justice.**

Three central Indiana Toyota dealerships protested the relocation of a fourth Toyota dealership. The Auto Dealer Services Division dismissed their action for lack of standing—affirmed by the trial court—concluding the dealerships were outside the "relevant market area," as defined by the Indiana Dealer Services Act, Ind. Code § 9-32-2-20 (Supp. 2015). We are asked to decide whether the Division's interpretation of that statutory definition was reasonable. Finding it was, we affirm.

### Facts and Procedural History

In an apparent effort to benefit from a growing customer base in Hamilton County, Ed Martin Toyota requested—and Toyota Motor Sales, U.S.A., Inc. planned to approve—that Ed Martin relocate from its Anderson, Madison County location, where it operated for several years, to the Fishers area. Prior to the move, Toyota informed its other new motor vehicle dealerships in the region, including Andy Mohr Toyota, Butler Toyota, and Tom Wood Toyota ("Dealers"), and it filed the relocation plan with the Auto Dealer Services Division of the Office of the Indiana Secretary of State ("Division").

2

The Dealers protested, seeking declaratory judgment and asking the Division to determine whether good cause existed for the move. See Ind. Code § 9-32-13-24(e) (setting forth the process by which dealers can protest the establishment or relocation of a dealership), -24(f) (listing the circumstances the Division must consider in determining whether good cause exists for establishing or relocating a dealership). Toyota moved to dismiss, arguing each of the Dealers lacked standing because they were outside the "relevant market area" set forth in Indiana Code section 9-32-2-20 ("the Statute"). The Statute defines the "relevant market area" as encompassing either a six- or ten-mile radius around the dealer's new site, depending on the type of dealer entering the area: the radius is six miles for "a new motor vehicle dealer who plans to relocate the dealer's place of business in a county having a population of more than one hundred thousand," Ind. Code § 9-32-2-20(1); the radius is ten miles for a "proposed new motor vehicle dealer," Ind. Code § 9-32-2-20(2)(A), or a "new motor vehicle dealer who plans to relocate the dealer's place of business in a county having a population of not more than one hundred thousand," Ind. Code § 9-32-2-20(2)(B).

The Division determined the Dealers failed to show they were entitled to protest because it was undisputed "the anticipated relocation is in excess of a six-mile radius into a county of more than 100,000 people and therefore not a violation of the RMA of the closest dealer as defined by [the S]tatute." App. at 44, 70, 94. In other words, because Toyota sought to relocate an existing dealership into a county with more than 100,000 people, the Division found Ed Martin fit the language of Subsection 20(1), with the relevant market area limited to a six-mile radius. Each Dealer was located outside that radius, so the Division dismissed their declaratory judgment

3

actions for lack of standing.[1]  The Dealers sought judicial review, and after allowing Toyota to intervene, the trial court affirmed the Division's administrative determination.

The Dealers appealed, and a divided panel of our Court of Appeals reversed and remanded, finding the Division's interpretation of the Statute was not reasonable.  Andy Mohr W., Inc. v. Office of Ind. Sec'y of State, 41 N.E.3d 704, 712–13 (Ind. Ct. App. 2015).  It determined "proposed new motor vehicle dealer" in Subsection 20(2)(A) could not be limited to newly created dealerships since another statutory section contemplates a proposed dealer's move: "the franchisor may not establish or *relocate the proposed [new motor vehicle] dealer* until the division has rendered a decision on the matter."  Id. at 708 (emphasis altered) (quoting Ind. Code § 9-32-13-24(e)).  Instead, a proposed new motor vehicle dealer is simply "a dealer that proposes to enter a market where that dealer is not already doing business."  Id. at 710.  And, it found "in a county" in Sections 20(1) and 20(2)(B) must refer only to a dealer's moving "within a county"; otherwise— under the majority's definition of proposed new motor vehicle dealer—a relocating dealer could fall under both sections.  Id. at 711–12.  Under this construction, because Ed Martin is not making an intra-county move, it fits under Subsection 20(2)(A) with its relevant market area encompassing a ten-mile radius.

The decision drew a dissent, which would have deferred to the Division's interpretation of the Statute, finding it to be reasonable.  Id. at 713 (Friedlander, J., dissenting).  Moreover, the dissent deemed the majority's interpretation of "proposed new motor vehicle dealer" in 20(2)(A) inconsistent with the plain language of the Statute, which uses two distinct terms:  "'proposed'

---

[1] Butler is located over seven miles from the site, Tom Wood sixteen miles, and Andy Mohr twenty-four miles.

4

dealers and 'relocated' dealers, clearly implying that the former is a planned/projected dealer while the latter is an established/existing dealer." Id. at 714.

Toyota and the Division sought transfer, which we granted, thereby vacating the opinion below. Andy Mohr W. v. Ind. Sec'y of State, 43 N.E.3d 243 (Ind. 2015) (table); Ind. Appellate Rule 58(A).

## Standard of Review

The Dealers here appeal the trial court's judgment affirming the Division's dismissal of their administrative action. As the trial court reviewed a paper record only, we are in just as good of a position as the trial court was to resolve the case, and thus need not defer to its ruling. Equicor Dev., Inc. v. Westfield-Washington Twp. Plan Comm'n, 758 N.E.2d 34, 37 (Ind. 2001); see also Walczak v. Labor Works-Ft. Wayne LLC, 983 N.E.2d 1146, 1152 (Ind. 2013). To navigate our analysis, we thus follow the same guideposts relied upon by the reviewing courts below. Amoco Oil Co., Whiting Refinery v. Comm'r of Labor, 726 N.E.2d 869, 872 (Ind. Ct. App. 2000).

Indiana's Administrative Order and Procedures Act sets forth those guideposts: we may set aside an agency action only if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence." Ind. Code § 4-21.5-5-14(d) (2012). It is the party challenging the validity of the agency action that bears the burden of proof. Ind. Code § 4-21.5-5-14(a).

Our review of agency action is intentionally limited, as we recognize an agency has expertise in its field and the public relies on its authority to govern in that area. Ind. Wholesale Wine & Liquor Co. v. State ex rel. Ind. Alcoholic Beverage Comm'n, 695 N.E.2d 99, 105 (Ind.

1998). Although we generally review questions of statutory interpretation de novo, where the statute is interpreted by the administrative agency charged with enforcing it, that interpretation is entitled to "great weight." Chrysler Grp. LLC v. Review Bd. of Ind. Dep't of Workforce Dev., 960 N.E.2d 118, 123 (Ind. 2012) (citing LTV Steel Co. v. Griffin, 730 N.E.2d 1251, 1257 (Ind. 2000)). Indeed, if the agency's interpretation is reasonable, we stop our analysis and need not move forward with any other proposed interpretation. Ind. Wholesale, 695 N.E.2d at 105; State v. Young, 855 N.E.2d 329, 335 (Ind. Ct. App. 2006).

### The Trial Court Properly Deferred to the Division's Reasonable Construction of the Statute.

In light of the standard of review, the issue facing us is a narrow one: whether the Division's interpretation of the Statute is reasonable.

The goal of statutory interpretation is to discern and further the intent of the legislature. Moryl v. Ransone, 4 N.E.3d 1133, 1137 (Ind. 2014). To do so, we start with the plain language of the statute, giving its words their ordinary meaning and considering the structure of the statute as a whole. Tyson v. State, No. 45S03-1509-CR-528, 2016 WL 756366, at *2 (Ind. Feb. 25, 2016). No word or part should be rendered meaningless if it can be reconciled with rest. Siwinski v. Town of Ogen Dunes, 949 N.E.2d 825, 828 (Ind. 2011). And when confronted with more than one statute on the same subject, we must try to harmonize any inconsistencies. Moryl, 4 N.E.2d at 1137. But we exercise caution so as not to add words or restrictions where none exist. Kitchell v. Franklin, 997 N.E.2d 1020, 1026 (Ind. 2013).

Balancing changing market dynamics with the need for fair competition, our General Assembly has provided auto dealers who may be affected by another dealer's presence—whether a new establishment or the relocation of an existing one—with the right to formally protest. Ind. Code § 9-32-13-24. This right, however, is not absolute but subject to certain standing

6

requirements; for instance, the challenging dealer must be within the statutorily defined "relevant market area":

> (1) With respect to a new motor vehicle dealer who plans to relocate the dealer's place of business in a county having a population of more than one hundred thousand (100,000), the area within a radius of six (6) miles of the intended site of the relocated dealer. The six (6) mile distance shall be determined by measuring the distance between the nearest surveyed boundary of the existing new motor vehicle dealer's principal place of business and the nearest surveyed boundary line of the relocated new motor vehicle dealer's place of business.
>
> (2) With respect to a:
>
> > (A) proposed new motor vehicle dealer; or
> >
> > (B) new motor vehicle dealer who plans to relocate the dealer's place of business in a county having a population of not more than one hundred thousand (100,000);
>
> the area within a radius of ten (10) miles of the intended site of the proposed or relocated dealer. The ten (10) mile distance shall be determined by measuring the distance between the nearest surveyed boundary line of the existing new motor vehicle dealer's principal place of business and the nearest surveyed boundary line of the proposed or relocated new motor vehicle dealer's principal place of business.

Ind. Code § 9-32-2-20. In short, the Statute contemplates three types of market disruptions that yield a specified relevant market area: (1) dealers "who plan[] to relocate" in large counties, (2)(A) "proposed" dealers, and (2)(B) dealers "who plan[] to relocate" in small counties. The first category results in a narrow protest range of six miles, whereas the latter two encompass a wider,

7

ten-mile area. The Division found this case fit squarely under Subsection 20(1), since Ed Martin plans to relocate in a large county.[2] We agree.

Proper construction of a statute is best driven by the plain language and structure of the specific statute at issue. Here, the word "relocate" appears only in the first and last category of the Statute; its absence in the middle category's language indicates Subsection 20(2)(A) does not contemplate relocating dealers. Moreover, *all* relocating dealers fit one of those relocating categories—their new location is either "in" a large county (more than 100,000) or "in" a small one (not more than 100,000)—so there is no need for their inclusion in the middle subsection.[3]

What does distinguish Subsection 20(2)(A) from the other two categories of market disruptions is the word "proposed." That word is again used at the end of Subsection 20(2), indicating proposed dealers are distinct from relocated dealers, as the radius should be measured from "the nearest surveyed boundary line of the *proposed or relocated* new motor vehicle dealer's principal place of business." Ind. Code § 9-32-2-20(2) (emphasis added); see also Ind. Code § 9-32-13-24(d) (requiring notice of intent to "establish an additional dealer or relocate an existing dealer"). To give "proposed" and Subsection 20(2)(A) meaning, we find it refers to newly established—and not already existing—dealers.

---

[2] It is undisputed Hamilton County has a population in excess of 100,000 people.

[3] To venture off course for a brief moment, we note the parties have disputed the meaning of the word "in." The Dealers implore us to read Subsections 20(1) and 20(2)(B) as limited to intra-county moves, saying if the legislature wanted to use "into a county" it would have. Opp. to Trans. at 8. Toyota responds that the legislature could have used "within the same county" but it did not. Toyota Reply Br. in Support of Pet. to Trans. at 2. Both are right: the legislature used neither "into" nor "within." And it didn't need to. The phrase "relocate the dealer's place of business in a county" simply refers to the county *in* which the business has relocated, whether it crossed a county line or not.

This construction makes sense in light of the legislature's decision to provide the right to protest with reasonable restrictions. The narrower, six-mile radius is appropriate for an already existing dealer that moves its operation in (within *or* into, <u>see</u> <u>supra</u> note 3) a large county under Subsection 20(1). Because the dealer already sells cars to customers, the threat of competition is not nearly as great as a wholly new dealership, and because it is moving in a large—and likely more densely populated—county, there are more prospective customers to support multiple operations. The wider, ten-mile radius is appropriate for the latter two categories: a proposed dealer opening up for the first time poses a potentially far-reaching disruption to the market; and a dealer that relocates in a small county may necessarily draw its customers from a wider geographic area due to a more dispersed population.

The Dealers urge us to take a different route, turning to *another* statute's use of the word "proposed" and insisting we resolve the inconsistencies in syntax in their favor. <u>Compare</u> Ind. Code § 9-32-2-20(2) (measuring from the "boundary line of the *proposed or relocated* new motor vehicle dealer's principal place of business") (emphasis added), <u>with</u> Ind. Code § 9-32-13-24(e) (stating "the franchisor may not establish or *relocate the proposed new motor vehicle dealer* until the division has rendered a decision") (emphasis added). But, courts should avoid interpretations that depend on "selective reading of individual words" that lead to irrational and disharmonizing results. <u>Prewitt v. State</u>, 878 N.E.2d 184, 186 (Ind. 2007). By exclusively relying on the use of the word "proposed" in another statutory section, "proposed" is rendered meaningless in *this* Statute. Plus, under the Dealers' proposed construction, to avoid overlap in the three types of market disruptions, the terms "intra-county" and "inter-county" must be read in where they were simply not present before.

In short, we are faced with two imperfect constructions of an inartfully drafted statute.[4] Considering these circumstances, we find the Division's interpretation—which gives meaning to the words and structure of the Statute and furthers its underlying purpose—to be imminently reasonable. The Statute reflects a legislative determination that relocating more than six miles away from another dealership in a densely populated area will not have such a negative effect on the market to allow incumbent dealers to stifle competition through the protest procedure. Of course, if the legislature meant something different, it is free to more precisely reflect its intention by revising the Statute.

## Conclusion

Because we find the Division's interpretation of the Statute reasonable, we affirm the trial court's order that deferred to the Division's exercise of its subject matter expertise in dismissing the action for lack of standing.

Rush, C.J., and Rucker and David, JJ., concur.

---

[4] Indeed, the term "*new* motor vehicle dealer" can confuse the first-time reader of the Statute. "New" refers to the type of cars sold, not the nascent nature of a "new" dealership.