OPINION ON REHEARING



ATTORNEY FOR APPELLANT

Nancy A. McCaslin
McCaslin & McCaslin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of J.B. and L.B.:


J.J. (Mother),
*Appellant-Respondent,*

v.

The Indiana Department of
Child Services,
*Appellee-Petitioner.*

September 8, 2016

Court of Appeals Case No.
20A05-1510-JC-1612

Appeal from the Elkhart Circuit
Court

The Honorable Deborah Domine,
Magistrate

The Honorable Terry C.
Shewmaker, Judge

Trial Court Cause No.
20C01-1507-JC-82
20C01-1507-JC-83

**Vaidik, Chief Judge.**

[1]    The Indiana Department of Child Services petitions for rehearing following our June 8, 2016 opinion in which we held that the CHINS court lost jurisdiction as soon as it discharged the parties, at which point the issue of custody reverted to

the paternity court. DCS argues that the CHINS court's custody-modification order survived the termination of the CHINS proceeding.

[2] Father and Mother shared custody of their children pursuant to an order of a paternity court. After a car accident in which Mother was under the influence of drugs and the children were not properly restrained, DCS filed a petition in juvenile court alleging that the children were CHINS. Mother and Father each admitted that the children were CHINS. The juvenile court found that the children were CHINS and scheduled a dispositional hearing. But before the dispositional hearing, DCS filed a motion to change custody to Father. The juvenile court held a hearing, following which it awarded Father sole custody and Mother supervised parenting time and then closed the CHINS case, without entering a dispositional decree that would have ordered services for Mother.

[3] DCS argues, among other things, that according to Indiana Code section 31-30-1-13(d), the CHINS court's custody-modification order survived the termination of the CHINS proceeding. Section 31-30-1-13 addresses concurrent jurisdiction of paternity and CHINS courts.[1] It provides, in full:

> (a) Subject to subsection (b), a court having jurisdiction under IC 31-14 of a child custody proceeding in a paternity proceeding has concurrent original jurisdiction with another juvenile court for

---

[1] A juvenile court has exclusive original jurisdiction in both CHINS and paternity cases, except as provided in Indiana Code sections 31-30-1-9, -10, -12, and -13. Ind. Code § 31-30-1-1. Sections 9, 10, 12, and 13 address times when there is concurrent jurisdiction.

the purpose of modifying custody of a child who is under the jurisdiction of the other juvenile court because:

> (1) the child is the subject of a child in need of services proceeding; or
>
> (2) the child is the subject of a juvenile delinquency proceeding that does not involve an act described under IC 31-37-1-2.

(b) Whenever the court having child custody jurisdiction under IC 31-14 in a paternity proceeding modifies child custody as provided by this section, the modification is effective only when the juvenile court with jurisdiction over the child in need of services proceeding or juvenile delinquency proceeding:

> (1) enters an order approving the child custody modification; or
>
> (2) terminates the child in need of services proceeding or the juvenile delinquency proceeding.

(c) If a juvenile court:

> (1) establishes or modifies paternity of a child; and
>
> (2) terminates a child in need of services proceeding or a juvenile delinquency proceeding regarding the child;

the court having concurrent original jurisdiction under subsection (a) shall assume or reassume primary jurisdiction of the case to address all other issues.

(d) An order establishing or modifying paternity of a child by a juvenile court survives the termination of the child in need of services proceeding or the juvenile delinquency proceeding.

Section 31-30-1-13 went into effect July 1, 1999. P.L. 164-1999, § 3. Subsections (c) and (d) were added effective July 1, 2011. P.L. 162-2011, § 42. Despite being on the books for nearly two decades, Section 31-30-1-13 has been addressed only a handful of times in our case law, while subsection (d) has never been addressed. Thus, we are working with a very clean slate. DCS argues that although subsection (d) says "[a]n order establishing or modifying *paternity* of a child by a juvenile court survives the termination of the [CHINS] proceeding," "paternity" must be read to include custody modifications because "the clear intent of the statute addresses custody modifications." Appellee's Reh'g Br. p. 14.

[4] The goal of statutory construction is to discern and further the intent of the legislature. *Andy Mohr West v. Office of Ind. Sec'y of State*, 54 N.E.3d 349, 353 (Ind. 2016). To do so, we start with the plain language of the statute, giving its words their ordinary meaning and considering the structure of the statute as a whole. *Id.* No word or part should be rendered meaningless if it can be reconciled with the rest. *Id.* It is just as important to recognize what a statute does not say as it is to recognize what it does say. *Davis v. Edgewater Sys. For Balanced Living, Inc.*, 42 N.E.3d 524, 528 (Ind. Ct. App. 2015).

[5] Subsection (d) provides that "[a]n order establishing or modifying paternity of a child by a juvenile court survives the termination of the [CHINS] proceeding."

There are two ways to read what "[a]n order establishing or modifying paternity of a child" means. One way is read "paternity" to mean establishing or modifying who a child's father is. The other way is to read "paternity" like DCS suggests, that is, establishing or modifying "paternity" includes custody modifications. There are problems with both approaches.

[6] The problem with giving "[a]n order establishing or modifying paternity of a child" its plain meaning is that it presumes that a juvenile court in a CHINS case can establish paternity. But Indiana Code section 31-14-2-1 provides that a man's paternity may be established in only one of two ways: (1) in an action under Article 14 or (2) by executing a paternity affidavit at the hospital or local health department under Indiana Code section 16-37-2-2.1.[2] Article 34, which governs CHINS cases, does not provide for the establishment of paternity. Indeed, Indiana Code section 31-34-15-6 provides that whenever a child born out of wedlock is alleged to be a CHINS and is under the supervision of DCS, DCS "shall refer [the] child's case to the local prosecuting attorney's office for the *filing of a paternity action*," which, according to Section 31-14-2-1, must be filed under Article 14 (emphasis added). Thus, it does not appear that a juvenile court in a CHINS case can "establish paternity." In addition, the phrase "modify paternity" is unclear, given that "[t]he Indiana Code has no

---

[2] In dissolution cases, the trial court may make "the legal equivalent of a paternity determination." *Russell v. Russell*, 682 N.E.2d 513, 518 (Ind. 1997).

provision for the filing of an action to disestablish paternity."[3] *In re Paternity of T.H.*, 22 N.E.3d 804, 807 (Ind. Ct. App. 2014).

[7] The other way is to read "paternity" to include custody modifications, as the article governing the establishment of paternity also addresses determining and modifying custody. *See* Ind. Code ch. 31-14-13. However, Section 31-30-1-13 uses "child custody" five times and some variant of "modify" four times in subsections (a) and (b). This is evidence that the legislature uses that language, as opposed to "paternity," when it wants to. In addition, Section 31-30-1-12, which addresses concurrent jurisdiction of marriage-dissolution and CHINS courts (as opposed to concurrent jurisdiction of paternity and CHINS courts), contains a provision nearly identical to Section 31-30-1-13(d) that uses the language "modifying child custody":

> (e) *An order modifying child custody, child support, or parenting time* issued under this section survives the termination of the child in need of services proceeding or the juvenile delinquency proceeding until the court having concurrent or original jurisdiction assumes primary jurisdiction and modifies the order.

Ind. Code § 31-30-1-12 (emphasis added). Thus, the legislature used "an order establishing or modifying paternity" in Section 31-30-1-13(d) while it used "an order modifying child custody, child support, and parenting time" in Section

---

[3] However, in rare cases a legally established father may challenge a paternity determination under Indiana Trial Rule 60(B). *See* 14 J. Eric Smithburn & Ann Carol Nash, Indiana Practice, *Family Law*, § 4:46 (2d ed. Supp. 2015-16).

31-30-1-12(e). Notably, these subsections were added at the same time. *See* P.L. 162-2011, § 42. Generally, when the legislature uses particular language in one section of the statute but omits it in another section, we presume that it is intentional. *See, e.g., Andrianova v. Ind. Family & Social Servs. Admin.*, 799 N.E.2d 5, 15 (Ind. Ct. App. 2003).

[8] Furthermore, if the legislature meant that a CHINS court can modify custody and that the CHINS court's custody-modification order survives the termination of the CHINS proceeding, there is another problem. Section 31-30-1-13(b) provides that if a paternity court modifies child custody when there is a CHINS case open for the same child, the paternity court's modification only becomes effective when the CHINS court (1) enters an order approving the modification *or* (2) terminates the CHINS proceeding. So, under DCS's reading of Section 31-30-1-13(d), if a CHINS court in one county does not approve a custody modification from a paternity court in another county and then modifies custody to a different parent, once the CHINS court terminates the CHINS proceeding, *both* orders would be in effect (with different parents receiving custody).

[9] Given that there are problems with each reading of subsection (d), we will not guess what the legislature meant when it said "[a]n order establishing or modifying *paternity* of a child by a juvenile court survives the termination of the [CHINS] proceeding." We therefore ask the legislature to take a deeper look at Sections 31-30-1-12 and -13 in light of these issues. As a result, we reach the same result as our original opinion but for different reasons by looking beyond

the language of Section 31-30-1-13 and turning our attention to the policy and purpose of the CHINS statutory scheme.

[10] The policy of this state and the purpose of Title 31 is to "strengthen family life by assisting parents to fulfill their parental obligations" and to "provide a continuum of services developed in a cooperative effort by local governments and the state." Ind. Code § 31-10-2-1; *see also In re N.E.*, 919 N.E.2d 102, 108 (Ind. 2010) ("[U]nder the policy pronouncements inherent in the entire scheme of CHINS procedures, a primary purpose and function of the [State] is to encourage and support the integrity and stability of an existing family environment and relationship." (quotation omitted)). The purpose of a CHINS inquiry is to determine whether a child's circumstances necessitate services that are unlikely to be provided without the coercive intervention of the court. *N.E.*, 919 N.E.2d at 106; *see also id.* at 105 ("[T]he truth of the matter is that a CHINS adjudication is simply that—a determination that a child is in need of services.").

[11] Here, at the July 27 detention hearing, DCS recommended supervised visitation for Mother and a family conference, and the juvenile court adopted DCS's recommendation. Tr. p. 7-8, 11. In its August 3 order finding the children to be CHINS, the CHINS court accepted DCS's recommendation regarding "placement, services, and programs."[4] Appellant's App. p. 39. The CHINS

---

[4] It is not clear what these services and programs were. In its August 24 petition for parental participation, DCS recommended that the CHINS court order specific services for Mother, such as therapy and an

court then set a dispositional hearing for September 3. But before the dispositional hearing, DCS filed a "Motion for Change of Custody" under the paternity statutes, asking the CHINS court to give Father sole legal and physical custody of the children and Mother parenting time. *See id.* at 57-58 (DCS's August 28 motion alleging "a substantial and continuing change of circumstances"). DCS also asked for the CHINS case to be closed, keeping the CHINS finding intact. Tr. p. 32. DCS did this before a dispositional decree was entered[5] and before Mother could participate in services. *See id.* at 33 (defense counsel arguing at the "motion for change of custody" hearing: "the problem I have . . . is it's in essence trying to turn, with regard to the two children, this into a custody case and not allow for [Mother] to be able to participate in services and work towards reunification. They're trying to cut that out at the beginning and not offer her an opportunity to enhance her parenting and to have services."). The CHINS court awarded Father sole custody and Mother supervised parenting time.[6] It then closed the CHINS case, without ever entering a dispositional decree, which, by statute, would

---

addictions assessment, *see* Appellant's App. p. 43-46; however, the CHINS case was closed before any of these services were ordered by the court, *see* Appellee's Br. p. 17 (DCS acknowledging that the CHINS court "did not order Mother's participation in any services as part of a parental participation order or dispositional decree"). The predispositional report recommended similar services for Mother. *See* Appellant's App. p. 55.

[5] After a child is found to be a CHINS, the juvenile court must hold a dispositional hearing within thirty days to consider, among other things, "placement of the child." Ind. Code § 31-34-19-1(a). The court then enters a dispositional decree. DCS argues that a dispositional decree was not required in this case because by virtue of Father being awarded sole custody, "Children no longer needed services." Appellee's Br. p. 16. This circular reasoning conflicts with the core purpose of the CHINS system to preserve and reunify families.

[6] Ironically, the CHINS court ordered that Mother's parenting time was to remain supervised until she received services, i.e., drug treatment and negative drug screens. *See* Appellant's App. p. 9.

have required that Mother have a reasonable opportunity for participation. *See* Ind. Code § 31-34-19-6; *see also* Ind. Code § 31-34-20-1(a)(6) (noting that the dispositional decree may order the parent to complete services as recommended by DCS and as ordered by the court).

[12] It is clear that the policy and purpose of the CHINS statutory scheme is not to remove children from their parents without giving the parents a reasonable opportunity to participate. But this goal was not furthered in this case. That is, DCS used the coercive power of the State to insert itself into a family relationship by obtaining a CHINS finding and then had the CHINS court modify sole custody to Father and close the CHINS case thirty days later— without entering a dispositional decree and giving Mother a meaningful opportunity to participate in services that DCS itself had recommended in both the petition for parental participation and the predispositional report. This is particularly troublesome given that a CHINS adjudication has adverse consequences for parents. *See* Ind. Code § 31-35-2-4(b)(2)(B)(iii) (providing that two separate CHINS adjudications can be the basis for a petition to terminate parental rights). We therefore reverse that part of the CHINS court's order that discharged the parties and terminated the CHINS case and remand this case for further proceedings consistent with the CHINS statutes, including any appropriate services for Mother.

Barnes, J., and Mathias, J., concur.