## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 23 2020, 8:32 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Frank R. Martinez, III
Highland, Indiana

ATTORNEYS FOR APPELLEE
REVIEW BOARD OF THE
INDIANA DEPARTMENT OF
WORKFORCE DEVELOPMENT

Tuyêñ-Kim T. Lê
Review Board Staff Attorney

Abigail R. Recker
Aaron T. Craft
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Company,<br>*Appellant,*<br><br>v.<br><br>C.R., et al.,<br>*Appellees.* | October 23, 2020<br><br>Court of Appeals Case No.<br>20A-EX-1126<br><br>Appeal from the Review Board of the Indiana Department of Workforce Development<br><br>The Honorable Larry A. Dailey, Chairperson<br><br>The Honorable Heather D. Cummings, Member<br><br>Case No.<br>20-R-687 |

**Bailey, Judge.**

# Case Summary

Company reduced the work hours of C.R. ("Claimant") by one-half and advised her to seek other employment. Claimant found other part-time employment and left her position with Company. An Indiana Department of Workforce Development claims investigator preliminarily determined that Claimant left her employment with Company without good cause and was disqualified from receiving unemployment compensation benefits pursuant to Indiana Code Section 22-4-15-1. An Administrative Law Judge ("the ALJ") reversed that determination, applying Section 22-4-15-1(c)(1)(B), a simultaneous employment provision modifying the disqualification provision. The Review Board of the Indiana Department of Workforce Development ("the Board") adopted and affirmed the ALJ decision. Company appeals, presenting the sole issue of whether the decision is contrary to law because Claimant, although simultaneously employed, voluntarily left her initial – as opposed to successive – employment, outside the scope of the statutory modification. We affirm.

# Facts and Procedural History

On August 25, 2014, Claimant began working for Company as a legal assistant, working thirty-two hours per week. She was assigned to work for Attorney M and Attorney A, who each contributed to Claimant's pay of $21.00 per hour.

In late 2019, Attorney A relocated to Florida and began transitioning toward retirement; he no longer contributed to Claimant's salary. Attorney M informed Claimant that he could not afford her services on a full-time basis and, if she could not pay her bills based upon a sixteen-hour work week, she should be "looking elsewhere." (Tr. at 11.)

[3] Claimant interviewed at the Porter County Prosecutor's Office, but was not offered that position, purportedly for conflict of interest concerns.[1] However, during the week of February 22, 2020, Claimant began working ten hours per week for a newly-practicing, non-Company attorney, at a rate of $18.00 per hour. Claimant also worked that week at Company. On February 27, 2020, Claimant worked her last day at Company. When she left, Claimant informed an attorney and Company's bookkeeper of her departure, but did not personally inform Attorney M.

[4] Claimant filed for unemployment benefits. On March 28, 2020, a claims investigator made an initial determination that Claimant was not eligible for unemployment benefits because she had left Company's employ without good cause. Claimant appealed that determination. On April 14, 2020, the ALJ conducted a telephonic hearing at which Claimant and Attorney M testified. On April 17, 2020, the ALJ rendered a decision reversing the determination of the claims investigator and finding Claimant eligible for unemployment

---

[1] Attorney M had provided services to the Prosecutor's office while Claimant was his legal assistant.

benefits.  Company appealed that decision.  On May 7, 2020, the Review Board adopted the decision of the ALJ.  Company now appeals.

# Discussion and Decision

Indiana Code Section 22-4-17-12(a) provides:  "Any decision of the review board shall be conclusive and binding as to all questions of fact.  Either party to the dispute or the commissioner may, within thirty (30) days after notice of intention to appeal as provided in this section, appeal the decision to the court of appeals of Indiana for errors of law under the same terms and conditions as govern appeals in ordinary civil actions."  The facts in this case are undisputed; the parties disagree about the application of Indiana Code Section 22–4–15-1(c)(1)(B) to those undisputed facts.  As such, this appeal involves only interpretation of the statute, a question of law, and we review conclusions of law made by the Review Board under a de novo standard.  *Indiana State Univ. v. LaFief*, 888 N.E.2d 184, 186 (Ind. 2008).  The interpretation of a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight unless the agency's interpretation would be unreasonable or inconsistent with the statute itself.  *Chrysler Grp., LLC v. Review Bd. of Indiana Dep't of Workforce Dev.*, 960 N.E.2d 118, 123 (Ind. 2012).  Also, we "regularly construe provisions of the Act liberally to favor the unemployed and promote the Act's humanitarian purpose."  *Id.* at 126; *see also* Ind. Code § 22–4–1–1

(declaring public policy behind the Act to be protecting against economic insecurity due to unemployment).[2]

[6]     Indiana Code Section 22-4-2-22 defines a valid claim for unemployment benefits as "a claim filed by an individual who has established qualifying wage credits and who is totally, partially, or part-totally unemployed." Indiana Code Section 22-4-3-2 provides: "An individual is 'partially unemployed' when, because of lack of available work, he is working less than his normal customary full-time hours for his regular employer and his remuneration is less than his weekly benefit amount in any calendar week, but no individual shall be deemed totally, part-totally, or partially unemployed in any week which he is regularly and customarily employed full-time on a straight commission basis." An employee must first have established customary full-time hours that are then reduced in order to be considered partially unemployed. *Mitchell v. Review Bd. of*

---

[2] Our Indiana Supreme Court approved the liberal construction to favor the unemployed:

> Our General Assembly declared "[e]conomic insecurity due to unemployment ... to be a serious menace to the health, morale, and welfare of the people of this state and to the maintenance of public order within this state" and that "[p]rotection against this great hazard of our economic life can be provided in some measure by the required and systematic accumulation of funds ... to provide benefits to the unemployed during periods of unemployment." Ind. Code § 22–4–1–1. Thus, courts regularly construe provisions of the Act liberally to favor the unemployed and promote the Act's humanitarian purpose. *See, e.g., Quakenbush v. Review Bd. of Ind. Dep't of Workforce Dev.*, 891 N.E.2d 1051, 1054 (Ind. Ct. App. 2008); *Bailey v. Review Bd. of Ind. Dep't of Workforce Dev.*, 668 N.E.2d 1293, 1295 (Ind. Ct. App. 1996); *Holmes v. Review Bd. of Ind. Emp't Sec. Div.* 451 N.E.2d 83, 86 (Ind.Ct.App.1983).

*Chrysler Group, LLC v. Review Bd. of Indiana Dep't of Workforce Dev.*, 960 N.E.2d 118, 126 (Ind. 2012).

*Indiana Dep't of Workforce Dev.*, 6 N.E.3d 477, 480 (Ind. Ct. App. 2014). Consistent with this definition, Claimant became partially unemployed in December of 2019. She left this reduced-hours position in February of 2020 and first applied for unemployment benefits upon her departure.

[7] The claims investigator initially denied Claimant benefits in reliance upon Indiana Code Section 22-4-15-1, which provides in relevant part:

> Regarding an individual's most recent separation from employment before filing an initial or additional claim for benefits, an individual who voluntarily left the employment without good cause in connection with the work or was discharged from the employment for just cause is ineligible for waiting period or benefit rights for the week in which the disqualifying separation occurred and until:
>
> (1) the individual has earned remuneration in employment in at least eight (8) weeks; and
>
> (2) the remuneration earned equals or exceeds the product of the weekly benefit amount multiplied by eight (8).

[8] After hearing testimony, the ALJ issued a written decision reversing the determination of the claims investigator. The ALJ articulated the issue as "whether the claimant voluntarily left employment without good cause in connection with the work," Appealed Order at 1, and recited a corresponding

standard of review.[3]  However, although the ALJ found that Claimant voluntarily left her employment with Company, she made no explicit finding as to whether the voluntary separation was with or without good cause.  Rather, the ALJ implicitly found a lack of good cause when she applied the modification to non-eligibility found in Indiana Code Section 22-4-15-1(c)(1)(B), which incorporates the "without good cause" language:

> (c)  The disqualifications provided in this section shall be subject to the following modifications:
>
> (1) An individual shall not be subject to disqualification because of separation from the individual's employment if: …
>
> (B) having been simultaneously employed by two (2) employers, the individual leaves one (1) such employer voluntarily without good cause in connection with the work but remains in employment with the second employer with a reasonable expectation of continued employment[.]

[9]  Company argues that the Act aims to protect those unemployed through no fault of their own, and it is not intended to reward an employee who secures a second job and then voluntarily quits their first position.  Company describes the situation to which the statutory modification is applicable as "simultaneous

---

[3] *See Brown v. Indiana Dep't of Workforce Dev.*, 919 N.E.2d 1147, 1151 (Ind. Ct. App. 2009) (stating that a claimant demonstrates good cause for leaving employment upon establishing two components:  "(a) that her reasons for abandoning her employment would impel a reasonably prudent person to terminate under the same or similar circumstances; and (b) that these reasons or causes are objectively related to the employment.")

employment by two employers, quitting one with the expectation of continued employment with the other, and subsequent unemployment by the second employer through no fault of the employee." Appellant's Brief at 8. In support of this statutory construction, Company directs our attention to *Winder v. Review Bd. of the Ind. Emp't Sec. Div.*, 528 N.E.2d 854 (Ind. Ct. App. 1988).

[10] The appellant in *Winder* had been employed full-time as a Trustee caseworker, accepted a part-time retail job which she quit without good cause in connection with the work, and continued to work as a caseworker for a number of days before she was discharged. After she was denied unemployment benefits pursuant to the disqualification provisions of Indiana Code Section 22-4-15-1, the appellant pursued an equal protection challenge. A panel of this Court concluded that Winder had been denied equal protection under the law:

> We must give the Act "a liberal construction in favor of employees because it is social legislation meriting such construction in order to promote its underlying humanitarian purposes." *Horvath v. Review Board of Indiana Employment Security Division* (1987) 2d Dist. Ind. App., 503 N.E.2d 441, 443.

> Winder argues that denial of benefits pursuant to I.C. 22–4–15–1 is not rationally related to two of the goals of the Indiana Employment Security Act. We agree. These goals are to provide benefits to those unemployed through no fault of their own and to encourage employment stability. Winder was unemployed through no fault of her own when a new trustee fired her from her full-time job as a caseworker. Though she had earlier quit a seasonal part-time position at Frank's, she did so reasonably expecting to maintain full-time employment at the Trustee's office. Thus, she was attempting to maintain stable employment.

*Id.* at 857. The Court recognized that the Employment Security Act ("the Act") sought to "encourage stable employment" and "Winder never voluntarily became unemployed." *Id.*

Company contends that the simultaneous employer provision should not be subject to manipulation and must be construed to apply only when, as in *Winder*, the last separation from employment was outside the employee's control. Without acknowledging that Claimant's reduction in hours was outside her control, Company argues that Claimant failed to act to maintain stable employment because she should have continued to work for Company until finding a full-time position.

The Board responds that the Act broadly defines unemployment to include partial unemployment, the plain language of the simultaneous employment provision does not restrict the modification to a particular sequence of job loss, and it must be applied in accordance with the humanitarian objective of the Act. The Board acknowledges that *Winder* describes one situation in which a simultaneously employed claimant may receive benefits – quitting a part-time job, continuing a full-time job with the expectation of continued employment, and having that expectation thwarted – but notes that the decision does not exclude a corollary situation – obtaining a part-time job with the expectation of continued employment and quitting a prior-held part-time job.

"Our first task when interpreting a statute is to give its words their plain meaning and consider the structure of the statute as a whole." *In re Doe*, 148

N.E.3d 1147, 1150 (Ind. Ct. App. 2020). We "'avoid interpretations that depend on selective reading of individual words that lead to irrational and disharmonizing results.'" *Id.* (quoting *West v. Office of Indiana Sec'y of State*, 54 N.E.3d 349, 353 (Ind. 2016)). We are mindful of both what a statute "does say" and "does not say," and we "do not presume that the Legislature intended any language used in a statute to be applied illogically or to bring about an unjust or absurd result." *Id.* (internal citations omitted).

[14] We observe that the initial focus of Indiana Code Section 22-4-15-1 is upon the most recent job loss, employing the language: "regarding an individual's most recent separation from employment before filing an initial or additional claim for benefits." The simultaneous employment provision requires "a reasonable expectation of continued employment," *see id.*, but does not – as the Board points out – explicitly limit application of the modification to voluntary separation from the last-acquired employment. That said, Company's argument as to manipulation is not without merit. We are not persuaded that the Legislature intended to render wholly irrelevant the circumstances under which a simultaneous employee left any particular position. The goals of the Act are "to provide benefits to those unemployed through no fault of their own and to encourage employment stability." *Winder*, 528 N.E.2d at 857. Should, for example, a full-time employee accept a part-time position with a continued expectation of employment there, while at the same time anticipating quitting the full-time position without good cause, subsequent blanket application of the modification to disqualification would not encourage employment stability.

But here a manipulation scenario is not borne out by the facts. After working thirty-two hours per week at Company for five and one-half years, Claimant's work hours were drastically reduced. The reduction was attributed to reduced Company income and not the fault of Claimant. Her immediate supervisor informed her that, if she needed more income, she should look for other employment. Claimant acted to maintain employment stability, notwithstanding the fact that she was not immediately offered full-time employment. The ALJ did not, as Company contends, misapply the simultaneous employee modification provision.

# Conclusion

The decision of the Review Board, adopting the decision of the ALJ, is not contrary to law.

Affirmed.

Vaidik, J., and Weissmann, J., concur.