


FILED

Aug 25 2025, 8:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

In the Matter of P.F., a Child in Need of Services, and
K.F. (Mother) and B.B. (Father)

*Appellant-Defendants*

v.

Indiana Department of Child Services,

*Appellee-Plaintiff*

---

August 25, 2025

Court of Appeals Case No.
25A-JC-10

Appeal from the Ripley Circuit Court

The Honorable Ryan J. King, Judge

Trial Court Cause No.
69C01-2405-JC-55

---

**Opinion by Judge DeBoer**

Chief Judge Altice and Judge Pyle concur.

**DeBoer, Judge.**

## Case Summary[1]

Child, born to B.B. (Father) and K.F. (Mother) on March 20, 2022, has been the subject of three child in need of services (CHINS) cases due to Mother's substance abuse and Father's incarceration. This appeal arises from the third CHINS case filed against Mother. In this case, the Indiana Department of Child Services (DCS) petitioned the court for an order that it no longer had to use reasonable efforts to reunify Child with Parents pursuant to Indiana Code section 31-34-21-5.6(b)(7) ("Multiple CHINS provision"), which was a 2024 amendment to the Indiana Code and has yet to be interpreted by this Court. The trial court granted DCS's motion. In this consolidated appeal, Parents argue: (1) there was insufficient evidence to order no reasonable efforts under the Multiple CHINS provision; and (2) the Multiple CHINS provision is

---

[1] We heard oral argument in this case on August 12, 2025 at the Indiana Statehouse. We thank the parties' counsel for their evident preparation and diligent advocacy.

unconstitutional as a violation of substantive due process. Finding the first issue dispositive, we reverse and remand to the trial court.

## Facts and Procedural History

Child has been the subject of three CHINS cases in her three years of life. The first case was filed on March 20, 2022, upon Child's birth and closed on April 18, 2023. The second case was filed on July 18, 2023, and closed on March 1, 2024. The third case, from which this appeal arises, was filed on May 28, 2024.

### A. First CHINS Case

Upon her birth, Child was removed from Mother under an emergency detention order due to Mother's use of methamphetamine four days prior to birth and Child testing positive for methamphetamine, amphetamine, and benzoylecgonine. Father was incarcerated at the time, so Child was placed with Mother's aunt and adjudicated a CHINS.

Mother participated in services such as drug screening, parenting education, and drug and alcohol treatment. The trial court's dispositional order entered on April 19, 2022, ordered that Child was to remain with Child's aunt. However, in February 2023, upon Mother's completion of the first phase of her drug and alcohol program, the trial court granted DCS's motion for Mother to begin a

trial home visit (THV)[2] with Child. Father participated in services while he was incarcerated until his release from prison on January 2, 2023. However, he was arrested and incarcerated again on felony charges on March 27, 2023. The CHINS case closed on April 18, 2023, with successful reunification of Mother and Child.

## B. Second CHINS Case

On July 17, 2023, three months after Mother and Child were reunified and the first CHINS case was closed, Child was removed from Mother under an emergency detention order due to Mother's positive drug screen for methamphetamine. Child was placed with Mother's cousin, and DCS filed a second CHINS case against Mother. Mother participated in services similar to those in the first case, and Father was in and out of incarceration throughout the case.

On September 15, based on Mother's consistent compliance with the case plan, DCS motioned the court to allow Mother to begin a THV with Child. After a hearing, the trial court granted the motion on September 25. The court entered

---

[2] A trial home visit "transition[s] child from out-of-home care to the care of the child's parent, guardian, or custodian." Indiana Department of Child Services Policy 8.39, Trial Home Visits, https://www.in.gov/dcs/files/8.39.pdf [https://perma.cc/U7KQ-JVWV].

its Order of the Court on Stipulation for CHINS and Agreed Dispositional Order on December 11, 2023. The order stated, in part, that Child "shall remain in [her] current home or placement with supervision by DCS" and DCS was to maintain wardship over Child. Exhibits Vol. 5 at 90. Child was in Mother's care full-time on a THV from September 25 until the close of the case on March 1, 2024.

## C. Third CHINS Case

[7] Two months later, on May 3, 2024, DCS received a report that Mother had relapsed and left Child, then two years old, unattended. DCS was unable to locate Mother until they received a call from the Florence, Kentucky Police Department informing them that Child was found alone, partially unclothed, outside a hotel. A DCS caseworker traveled to Kentucky but was unable to take Child into emergency custody before Mother left the area with Child. DCS could not locate Mother again until she called them on May 27 to inform them that she was in Franklin, Indiana.

[8] Upon finding Mother in Franklin, DCS removed Child under an emergency detention order and filed this third CHINS case. Father was still incarcerated and unable to serve as placement, so Child was again placed with Mother's cousin. The trial court adjudicated Child a CHINS and issued a predispositional order requiring Mother and Father to participate in services

similar to those from the previous cases. Mother mostly participated but had one service cancelled for noncompliance. Father failed to participate in most services and those were also cancelled due to noncompliance.

[9] On October 17, 2024, DCS filed a motion asking the trial court to enter an order "stating that no reasonable efforts are required to reunify or preserve the family relationship of [Child]." Appellant's (Mother's) Appendix Vol. 2 at 182. A hearing was held at which the court heard testimony from DCS caseworkers and service providers familiar with Child's prior two cases. On November 13, the trial court granted DCS's motion, finding no reasonable efforts were required. The trial court then held a permanency hearing at which DCS advocated to change Child's plan to adoption and Parents objected, instead proposing a guardianship. However, finding that the Child needed a more permanent plan, the trial court ordered the Child's permanency plan be changed to adoption. This appeal ensued.

## Discussion and Decision

[10] States, through their child welfare programs, are required to use "reasonable efforts . . . to preserve and reunify families" in order to receive federal grants for foster care, prevention, and permanency. 42 U.S.C. § 671(a)(15)(B). However, states may codify aggravated circumstances under which a court may order that such reasonable efforts are no longer required. *See* 42 U.S.C. § 671(a)(15)(D) .

This requirement and these circumstances are codified in Indiana Code sections 31-34-21-5.5 (reasonable efforts) and 31-34-21-5.6 (no reasonable efforts). Section 5.6 lists numerous instances in which a court can find that DCS is no longer required to use reasonable efforts to reunify, including when a parent has committed certain violent or sexual crimes or when the parent's parental rights have been involuntarily terminated as to another child. *See* Ind. Code § 31-34-21-5.6(b)(2), (4).

[11]    Effective July 1, 2024, the Indiana General Assembly amended the no reasonable efforts statute, adding the Multiple CHINS provision as subpart (b)(7), which states in relevant part:

> (b) Reasonable efforts to reunify a child with the child's parent, guardian, or custodian or preserve a child's family . . . are not required if the court finds[:]
>
>  . . .
>
>> (7) The child:
>>> (A) was the subject of two (2) or more previous:
>>>> (i) child in need of services proceedings under this chapter; . . . [and]
>>> (B) **was removed from the home of the child's parent,** guardian, or custodian under:
>>>> (i) a dispositional decree entered under IC 31-34-20-1; . . .
>>> in each of the proceedings described in clause (A);

and the court finds that each removal described in clause
(B) was the result of conditions caused by the parent,
guardian, or custodian.

I.C. § 31-34-21-5.6(b)(7) (emphasis added). This amended statute has yet to be interpreted by this Court.[3]

[12] In order for the trial court to find that DCS did not have to use reasonable efforts to reunite Parents and Child, DCS had to prove that: (1) Child was the subject of two or more previous CHINS cases; (2) Child was removed from her parent's home under a dispositional decree in each of those previous cases; and (3) the removal was due to conditions caused by the parent. Here, Parents argue there was insufficient evidence because DCS failed to prove the second element, contending that Child was never removed from Mother's home under a dispositional decree in the second CHINS case.

[13] Our decision as to whether DCS presented sufficient evidence of Child's removal in the second case turns on the meaning of "removed" as used in the Multiple CHINS provision. We recognize that appellate review of family law

---

[3] We acknowledge that the dispositions entered in the first two CHINS cases as well as the opening of the third case occurred before the 2024 amendment went into effect. For the first time on appeal, Parents present an undeveloped argument that the Multiple CHINS provision is inapplicable to their case because all three CHINS cases pre-date its effectiveness. However, Parents did not present this argument before the trial court and do not raise it as a dispositive issue on appeal. Given that the parties have not fully briefed this issue, we do not address it and instead focus on the parties' arguments regarding sufficiency and constitutionality, which we find dispositive.

matters generally requires that we grant latitude and deference to the trial court pursuant to its "unique ability to see the witnesses, observe their demeanor, and scrutinize their testimony[.]" *Matter of E.K.*, 83 N.E.3d 1256, 1260 (Ind. Ct. App. 2017), *trans. denied*. However, construction of the Multiple CHINS provision presents an issue of statutory of interpretation, which we review de novo. *Coonce v. State*, 240 N.E.3d 721, 723 (Ind. Ct. App. 2024).

[14] Parents argue that removal under the Multiple CHINS provision requires physical separation of Child from Mother. Because Child was in Mother's care on a THV from September 25, 2023 to March 1, 2024, with no break, they contend that Child was not "removed from the home of the child's parents" under the December 11, 2023 dispositional order within the meaning of the Multiple CHINS provision. We agree with Parents.

[15] Despite the use of the words "removed" and "removal" throughout Title 31 of the Indiana Code, these words are not defined as they pertain to CHINS or termination of parental rights (TPR) proceedings. Children can be removed in some form or fashion through different orders in a CHINS proceeding, such as custody or detention orders pursuant to Indiana Code section 31-34-2-1 or Indiana Code section 31-34-5-3 respectively. Children can also be removed pursuant to a dispositional decree under Indiana Code section 31-34-20-1, which is the type of removal contemplated by the Multiple CHINS provision.

"[W]hen a statutory term is undefined, the legislature directs us to interpret the term using its 'plain, or ordinary and usual, sense.'" *Rainbow Realty Grp., Inc. v. Carter*, 131 N.E.3d 168, 174 (Ind. 2019) (quoting *Town of Brownsburg v. Fight Against Brownsburg Annexation*, 124 N.E.3d 597, 605 (Ind. 2019)); *see also* I.C. § 1-1-4-1(1).

[16] In determining a statute's meaning, we first look to "the plain language of the statute, giving its words their ordinary meaning and considering the structure of the statute as a whole." *West v. Office of Ind. Sec'y of State*, 54 N.E.3d 349, 353 (Ind. 2016). To ascertain ordinary meaning, we usually avoid legal or specialized dictionaries, finding general-language dictionaries to be more appropriate references. *Rainbow Realty Grp., Inc.*, 131 N.E.3d at 174.

[17] Turning to the statute before us, for a court to relieve DCS of its obligation to use reasonable efforts, the Multiple CHINS provision requires that Child was "removed from the home of the child's parent . . . under a dispositional decree[.]" I.C. § 31-34-21-5.6(b)(7)(B)(i). Merriam-Webster defines "remove" to mean "to change the location, position, station, or residence of" or "to go away." *Remove*, Merriam-Webster, https://www.merriam-webster.com/dictionary/remove [https://perma.cc/87Y4-ZNPH]. The American Heritage Dictionary defines it similarly to mean "[t]o move from a place or position occupied," "[t]o transfer or convey from one place to

another," or "[t]o take away; withdraw." *Remove*, The American Heritage Dictionary, https://ahdictionary.com/word/search.html?q=remove [https://perma.cc/TLX8-YQ34].

[18] Giving the words in the Multiple CHINS provision their plain and ordinary meaning, we conclude Child was not "removed from the home of [her] parent" under the December 11 dispositional decree because Child never left Mother's home after the decree was entered. The dispositional decree ordered that Child "shall" remain in her then-current placement, which was with Mother. Ex. Vol. 5 at 90. Child was never taken away from or moved to a different location out of Mother's care upon or after the dispositional order was entered. From September 25, 2023, until the close of the case in March 2024, Child was in Mother's constant care.

[19] This conclusion also finds support in our case law. In determining whether children were removed from their parents for at least six months under a dispositional decree in *Tipton v. Marion Cnty. Dep't of Pub. Welfare*, this Court found that "[s]ince it is readily apparent that a child can be removed from a parent before CHINS proceedings have been initiated, removal under a dispositional decree must refer to a dispositional decree which authorizes an *out-of-home placement*." 629 N.E.2d 1262, 1265-66 (Ind. Ct. App. 1994) (emphasis added). In this case, the dispositional order authorized Child to

"remain in her current placement," which was on the THV with Mother, and Child was never placed out of Mother's home after the dispositional order was entered.

[20] Parents also direct us to case law discussing the calculation of time children were removed from the home under the TPR statute. In that context, this Court has found or suggested that the removal "clock" does not start until the dispositional decree is entered and that intermittent periods of time in which children are in their parents' care under that decree are subtracted from the removal calculation. *See In re B.F.*, 976 N.E.2d 65, 67 (Ind. Ct. App. 2012) (despite being physically removed from their parents' home for nine months, the children were not "removed" from their parents for six months "under a dispositional decree" because the dispositional decree had been in effect for less than four months); *see also Matter of A.N.J.*, 690 N.E.2d 716, 720-21 (Ind. Ct. App. 1997) ("Although the children were returned to their father for a five-month period, . . . the remaining two to three years were spent in foster care pursuant to a dispositional decree. Clearly, the children were removed from [the father] for at least six months under a dispositional decree."); *see also Matter of B.L.*, No. 22A-JT-1851, 2023 WL 1497996 at *7 (Ind. Ct. App., Feb. 3, 2023) (finding that "[e]xcept for the several months that Father had a trial home visit,

Child has been removed from the home for almost two years"), *trans. denied* (mem.).[4]

[21] The State argues that despite her physical presence with Mother during such time, Child was still legally "removed" for purposes of the provision. It notes that Child was on a *trial* visit, with Mother never returning to full custody of Child prior to the dispositional order and DCS retaining wardship over Child until the close of the case. The State further contends that language in the dispositional order stating "it [was] in the best interest of the child to be removed from the home environment" and "remaining in the home would be contrary to the welfare of the child" supports a conclusion that child was removed despite physical placement with Mother.[5] Ex. Vol. 7 at 105-06; *see* Appellee's Br. at 55.

---

[4] Pursuant to Indiana Appellate Rule 65(D)(2), we consider *Matter of B.L.* for persuasive value only.

[5] The State also contends that removal from Father constituted removal from Mother. However, the case law cited by the State involved situations in which a child was removed from the physical custody of one parent, and the other parent, who did not have physical custody, argued that the child was not "removed" from them. *See Matter of K.H.*, 688 N.E.2d 1303, 1305 (Ind. Ct. App. 1997) (finding that "[a]lthough the mother had legal custody and the father was incarcerated, the child was effectively removed from the custody of both parents when taken from the mother and placed in foster care"). The cases cited by the State hold that the removal of a child from the physical custody of one parent is sufficient to consider a child removed from the parent who does not have physical custody. Those are not the facts before the Court here. While removal from Mother's physical custody here supports a conclusion as to removal from Father (and was in fact used to support such a conclusion), DCS now argues the inverse—that because there is sufficient evidence to show Child's removal from Father due to his incarceration, there is sufficient evidence to find that Child was also removed as to Mother despite Child being in her physical custody. However, such a conclusion would extend our case law beyond its logical application.

[22] We are unpersuaded. First, THV or not, Child was placed in Mother's home during that time. We will not read into the Multiple CHINS provision a specific level of permanency required for a child to be considered *not* removed from the parent's home. Second, wardship is not the same as removal. The dispositional decree at issue in the Multiple CHINS provision was entered under Indiana Code section 31-34-20-1. That section allows a court, if a child is found to be a CHINS, to enter

> one (1) or more of the following dispositional decrees:
> . . .
> (3) Remove the child from the child's home and authorize the department to place child in another home, shelter care facility, child caring institution, group home, or secure private facility[.]
>
> (4) Award wardship of the child to the department for supervision, care, and placement.

I.C. § 31-34-20-1(a)(3), (4). The enumeration of these options—the distinction between removal and wardship—undermines DCS's contention that its wardship over Child shows Child was removed. Based on the statutory language, a trial court is permitted to order wardship without removal. Furthermore, the legislature could have decided to make wardship an element of the Multiple CHINS provision rather than removal, but it did not.

[23] We are equally unpersuaded by the State's reliance on language in the dispositional order regarding Child's best interests to be removed and Child's welfare if she were to remain at home. *See* Ex. Vol. 7 at 105-06. The State fails to reconcile this "plain" language with the equally plain operative language in the order authorizing continuation of Child's then-current placement, which was in Mother's home. Appellee's Br. at 55. Further, DCS filed the THV motion on September 15, 2023, and under Indiana's Department of Child Services Policy 8.39, a THV is appropriate "when the safety and well-being of the child can be reasonably ensured" and: (1) the permanency goal is reunification; (2) there is documented progress toward case goals; (3) safety concerns have been addressed; and (4) the service level of the case can be decreased by at least one level. INDIANA DEPARTMENT OF CHILD WELFARE POLICY 8.39, Trial Home Visits, https://www.in.gov/dcs/files/8.39.pdf [https://perma.cc/7ESF-YWJ6]. The policy further states that DCS will "remove the child from the THV and return the child to out-of-home care if the child's safety and/or well-being are at risk[.]" *Id.*

[24] Not only does DCS's own policy language show that a THV is considered in-home care, but DCS's THV motion and the fact that it allowed the THV to continue until the close of the case both show that DCS considered it safe for Child to be with Mother and that placement with Mother was not a threat to

Child's welfare. Additionally, under the dispositional order, Mother was ordered to maintain "suitable, safe, and stable housing," and there is no indication that she failed to do so prior to the close of the second case. Ex. Vol. 5 at 95. The language DCS points to does not overcome the operative language in the order dictating Child's placement and that Child's actual placement was with Mother in her home.

[25] In sum, based on the plain and ordinary meaning of the provision's language and our case law, we find that "removed from the home of the child's parent . . . under a dispositional decree" necessarily means that the child was placed outside the parent's home for any period of time pursuant to a dispositional decree. Because the evidence here shows that Child's physical placement was in Mother's home for the entire period they were under the dispositional decree and finding it immaterial that it was in the form of a THV, DCS failed to prove that Child was removed from her parent's home under a dispositional decree in the second CHINS case. Therefore, the second element of the Multiple CHINS provision was not proven, and there was insufficient evidence to support the trial court's finding that reasonable efforts were no longer required.

[26] Because we resolve Parents' case on the sufficiency of the evidence, we decline to decide Parents' constitutional argument. "[P]ursuant to the doctrine of constitutional avoidance, this [C]ourt avoids addressing the constitutionality of

a statute when another avenue is available." *Bookwalter v. Ind. Election Comm'n*, 209 N.E.3d 438, 441 (Ind. Ct. App. 2023) (citing *Ind. Wholesale Wine & Liquor Co., Inc. v. State ex rel. Ind. Alcoholic Beverage Comm'n*, 695 N.E.2d 99, 108 (Ind. 1998)), *trans. denied*; *see also Snyder v. King*, 958 N.E.2d 764, 786 (Ind. 2011) ("[W]e will pass upon the constitutionality of a coordinate branch's action *only* when it is absolutely necessary to do so.") (emphasis in original).

## Conclusion

[27] Finding there was insufficient evidence to show that all the elements of the Multiple CHINS provision were proven below, the trial court erred in finding that reasonable efforts were not required. As such, we reverse and remand with instructions to provide Parents with reunification services. Additionally, because the change in Child's permanency plan was partially reliant on the no reasonable efforts finding, we remand for further proceedings on the permanency plan consistent with this opinion.

[28] Reversed and remanded.

Altice, C.J., and Pyle, J., concur.

ATTORNEY FOR APPELLANT FATHER

Jennifer A. Joas
Joas Law, LLC
Madison, Indiana


ATTORNEY FOR APPELLANT MOTHER

R. Patrick Magrath
West Sixth Law, LLP
Madison, Indiana


ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General
Indianapolis, Indiana


Evan Matthew Comer
Supervising Deputy Attorney General
Indianapolis, Indiana